**Rosen, Tsionis & Pizzo PLLC**
*f/k/a* **Law Offices of Avrum J. Rosen, PLLC**
38 New Street
Huntington, New York 11743
(631) 423-8527
Avrum J. Rosen, Esq.
Alex E. Tsionis, Esq.
Daniel J. LeBrun, Esq.

*Proposed Attorneys for Jewelry Designer Showcase, Inc.*
*Debtor and Debtor in Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

In re:                                                              Chapter 11 (Subchapter V)

JEWELRY DESIGNER SHOWCASE, INC.                Case No. 25-40076-ess
*dba* DANNUNZIO DESIGNED

                                    Debtor.
-------------------------------------------------------------X

## DEBTOR'S PLAN OF REORGANIZATION

## INTRODUCTION

Jewelry Designer Showcase Inc. *d/b/a* Dannunzio Designed, the debtor and debtor in possession (the "Debtor"), proposes this plan of reorganization (the "Plan") pursuant to Subchapter V of Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## OVERVIEW OF THE PLAN

The Debtor's Plan is a reorganizational plan aimed at adjusting its debts in accordance with the Bankruptcy Code. The key highlights of the Debtor's plan include a proposal: (i) to pay New York State Department of Taxation and Finance's secured claim in accordance with the Bankruptcy Code; (ii) to pay the Debtor's disposable monthly income to its general unsecured creditors over three years; and (iii) for equity interests in the Debtor to retain their interests.

The Debtor is a Delaware corporation with its corporate office located at 400 Rella Blvd, Suite 165, Suffern, New York 10901. The Debtor is a luxury jewelry designer incorporated in or around December 2010. The Debtor's business involves crafting unique, beautiful, and innovative natural diamond jewelry. The Debtor's principal assets are its sample jewelry pieces stored in a safe off-premises and its intellectual property.

The Debtor's bankruptcy was prompted by a series of events including: (i) the Covid 19 Pandemic and global economic volatility; (ii) the failure of NOVA Family Offices to follow through with its promised funding to the Debtor in the amount of $75,000,000.00, which was

agreed to between the parties in March 2024; and (iii) a restraining order issued in connection with a $3,500,000.00 judgment against the Debtor held by Steven D'Angelo and Steveline Inc. For a complete overview of the circumstances leading to the Debtor's filing under Chapter 11 of the Bankruptcy Code, please see the *Declaration of John W. Salvatore Pursuant to E.D.N.Y. LBR 1007-4*, which is annexed as **Exhibit "A"** to this Plan and separately available at Dkt. No. 33 in this case.

The Debtor filed this Bankruptcy Case in order to obtain the necessary breathing room to restructure its debts to creditors. The Debtor intends to make distributions to allowed unsecured claims of the Debtor's projected disposable income for a period of three (3) years.

## ARTICLE I

## <u>DEFINITIONS</u>

The following terms have the respective meanings specified below, except as expressly provided in other sections of the Plan unless the context otherwise requires (such meanings to be equally applicable to both the singular and plural and masculine and feminine forms of the terms defined). Any capitalized term used in the Plan but not defined herein that is used in the Bankruptcy Code or Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or Bankruptcy Rules.

**1.01** "<u>Administrative Claim</u>" shall mean a Claim for payment of an administrative expense of a kind specified in sections 503(b) or 507(a)(l) of the Bankruptcy Code, including, without limitation, the actual, necessary costs and expenses incurred after the commencement of the Bankruptcy Case of preserving the Debtor's Estate and operating the Debtor's business, including wages, salaries, or commissions for services, compensation for legal and other services and reimbursement of expenses awarded under sections 330(a) or 331 of the Bankruptcy Code, and all fees and charges assessed against the Estate under Chapter 123 of Title 28, United States Code.

**1.02** "<u>Administrative Claims Bar Date</u>" means the date by which all Administrative Claims must be filed with the Bankruptcy Court to be allowed. The Administrative Claims Bar Date may be established by the Bankruptcy Court as a specific date as part of the Confirmation Order.

**1.03** "<u>Allowed Administrative Claim</u>" means all or any portion of an Administrative Claim that has been or becomes allowed by Order of the Bankruptcy Court.

**1.04** "<u>Allowed Claim</u>" means a Claim (a) with respect to which a Proof of Claim has been filed with the Bankruptcy Court in accordance with the provisions of section 501 of the Bankruptcy Code and Bankruptcy Rule 3001 and within any applicable period of limitation fixed by Rule 3003 or any notice or Final Order of the Bankruptcy Court; (b) deemed filed pursuant to Bankruptcy 1111(a) of the Bankruptcy Code by virtue of such Claim having been scheduled in the list of Creditors prepared and filed by the Debtor with the Bankruptcy Court pursuant to section 521 of the Bankruptcy Code and Rule 1007(b) and not listed as disputed, contingent, or

unliquidated; or (c) deemed an Allowed Claim (including Allowed Secured Claims and Allowed Unsecured Claims) pursuant to the provisions of the Plan or any Final Order of the Bankruptcy Court.  Unless otherwise provided in the Plan or unless deemed or adjudicated an Allowed Claim pursuant to the provisions of the Plan or any Final Order of the Bankruptcy Court, an Allowed Claim shall not include any Claim as to which an objection to or proceeding challenging the allowance thereof has been interposed by the Debtor within any applicable period of limitation fixed by the Plan, by Rule 3003, or any Final Order of the Bankruptcy Court, until such objection or proceeding has been overruled, dismissed, or settled by entry of a Final Order.  Notwithstanding the filing of any such objection or the commencement of any such proceeding, a Claim may be temporarily allowed for voting purposes pursuant to the provisions of Rule 3018(a).  Unless otherwise specified in the Plan or any Final Order of the Bankruptcy Court, an Allowed Claim shall not include or accrue interest on the amount of such Claim maturing, incurred otherwise or arising subsequent to the Petition Date.

1.05    "Allowed Interest" means any and all Interest in the Debtor as to which no objection to the allowance thereof has been interposed with or any Final Order of the Bankruptcy Court has been entered so disallowing.

1.06    "Allowed Priority Claim" means a Priority Claim pursuant to section 507 of the Bankruptcy Code, exclusive of section 507(a)(8) of the Bankruptcy Code; to the extent such Priority Claim is or becomes an Allowed Claim.

1.07    "Allowed Priority Tax Claim" means a Priority Claim pursuant to section 507(a)(8) of the Bankruptcy Code; to the extent such Priority Claim is or becomes an Allowed Claim.

1.08    "Allowed Unsecured Claim" means an Unsecured Claim to the extent such Unsecured Claim is or becomes an Allowed Claim.

1.09    "Assets" means each and every item of Property of the Estate and every interest of the Debtor and its Estate as of the Effective Date, whether tangible or intangible, legal or equitable, liquidated or unliquidated, whether or not controlled by the Debtor, and includes without limitation: (a) all real and personal property and Cash; (b) all rights, Claims, demands, or Causes of Action, whether arising by statute or common law, and whether arising under the laws of the United States, other countries, or applicable state or local law; (c) any and all amounts owed to the Debtor, including accounts receivable, contract rights, or other rights, including without limitation rights to payment, contribution or distribution from Insiders, whether due prior or subsequent to the Petition Date; (d) all of the Debtor's books, records, and privileges; and (e) all Executory Contracts, and other contracts, agreements, licenses, and leases.

1.10    "Bankruptcy Case" and "Chapter 11 Case" means the Debtor's bankruptcy case that is pending before the United States Bankruptcy Court for the Eastern District of New York, Brooklyn Division, pursuant to Chapter 11 of the Bankruptcy Code, Case Number 25-40076-ess.

1.11    "Bankruptcy Code" or "Code" means Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, including any amendments thereto, in effect during the Bankruptcy Case.

**1.12** "<u>Bankruptcy Court</u>" or "<u>Court</u>" means the United States Bankruptcy Court for the Eastern District of New York, Brooklyn Division, in which the Bankruptcy Case is pending, and any Court having jurisdiction to hear appeals or *certiorari* proceedings therefrom.

**1.13** "<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure promulgated under Title 28, United States Code, section 2075, including any amendments thereto, as they may be amended from time to time during the Bankruptcy Case.

**1.14** "<u>Bar Date</u>" means the date fixed by Order of the Bankruptcy Court as the last date for the filing of Claims in this Bankruptcy Case, which is March 14, 2025.

**1.15** "<u>Business Day</u>" means every day except Saturdays, Sundays, federal holidays, and New York state holidays observed by the Bankruptcy Court.

**1.16** "<u>Cash</u>" means cash or cash equivalents, including, but not limited to, checks, bank deposits, negotiable instruments, or other similar items.

**1.17** "<u>Causes of Action</u>" means any and all of the Estate's and the Debtor's actions, Claims, demands, rights, defenses, counterclaims, cross-claims, suits, causes of action, liabilities, obligations, debts, judgments, remedies, damages, recoupments, setoffs, cross claims, counterclaims, third party claims, indemnity claims, contribution claims, and any other claims, whether known or unknown, foreseen or unforeseen, direct or indirect/derivative, choate or inchoate, in law, equity or otherwise, including but not limited to the right to recover transfers voidable or recoverable under sections 502, 542, 543, 544, 545, 547, 548, 549, 550, 551, and/or 553 of the Bankruptcy Code, and any and all other claims or rights of any value whatsoever, at law or in equity, against any Creditor or other third party, including any and all claims against any Insiders, members, officers, directors, managers or employees of the Debtor, including any claims for contribution or indemnification for any unauthorized post-petition obligations or transactions and any transaction or obligation incurred by the Debtor not otherwise approved by the Bankruptcy Court; *provided*, *however*, that, when used in the Plan, the term Causes of Action does not include any Claims, obligations, suits, judgments, damages, rights, remedies, causes of action, charges, costs, debts, indebtedness, or liabilities released or waived pursuant to the terms of the Plan or by a Final Order of the Bankruptcy Court. A Cause of Action will not under any circumstances be waived as a result of the failure of the Debtor to describe such Cause of Action with specificity in the Plan, and nothing in the Plan operates as a release of any of the Causes of Action except as specifically provided in the Plan.

**1.18** "<u>Claims</u>" means "claim" as such term is defined in section 101(5) of the Bankruptcy Code.

**1.19** "<u>Class</u>" means any Class into which Claims or Interests are classified pursuant to the Plan.

**1.20** "<u>Confirmation</u>" means the process leading to confirmation of the Plan, including the entry of the Confirmation Order pursuant to section 1129 of the Bankruptcy Code Confirmation

Date means the date of entry of the Confirmation Order by the Bankruptcy Court on the Court's docket.

**1.21**    "<u>Confirmation Hearing</u>" means the date set by the Bankruptcy Court for the hearing on confirmation of the Plan, as may be continued from time to time.

**1.22**    "<u>Confirmation Order</u>" means the Final Order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of the Bankruptcy Code.

**1.23**    "<u>Confirmation Date</u>" means the date that an Order is entered confirming the Debtor's Plan.

**1.24**    "<u>Contingent</u>" means, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which or the obligation to make payment on which is dependent upon a future event that may or may not occur.

**1.25**    "<u>Creditor(s)</u>" means "creditor" as such term is defined in section 101(10) of the Bankruptcy Code.

**1.26**    "<u>Debtor</u>" means Jewelry Designer Showcase Inc. *d/b/a* Dannunzio Designed, the debtor and debtor-in-possession in the above-captioned Chapter 11 case.

**1.27**    "<u>DIP Loan</u>" means the debtor-in-possession loan that the Debtor is currently negotiating with the Steveline Parties.

**1.28**    "<u>Disallowed</u>" means, when referring to a Claim, a Claim or any portion of a Claim that has been disallowed or expunged by a Final Order of a Court.

**1.29**    "<u>Disposable Income</u>" means "disposable income" as such term is defined in section 1191(d) of the Bankruptcy Code.

**1.30**    "<u>Disputed Claim</u>" means every Claim or portion thereof, that is not an Allowed Claim and that has not yet been Disallowed.

**1.31**    "<u>Distribution</u>" means a distribution to the Holders of Allowed Claims.

**1.32**    "<u>Effective Date</u>" means the thirtieth (30th) day after the entry of the Order confirming the Plan unless the Confirmation Order provides otherwise.

**1.33**    "<u>Entity</u>" means "entity" as such term is defined in section 101(15) of the Bankruptcy Code.

**1.34**    "<u>Equity Interests</u>" or "<u>Interest</u>" means any and all equitable or legal interests in the Debtor by virtue of their membership in the Debtor.

**1.35** "Estate" means the bankruptcy estate of the Debtor, created pursuant to section 541 of the Bankruptcy Code.

**1.36** "Exculpated Parties" means the Debtor, the Debtor's Professionals, and all of the estate's fiduciaries.

**1.37** "Executory Contract" means every unexpired lease to which the Debtor is a party and every other contract that is subject to being assumed or rejected by the Debtor under section 365 of the Bankruptcy Code, pursuant to the Plan or pursuant to separate motion.

**1.38** "Final Decree" means the Bankruptcy Court's final decree pursuant to section 350(a) of the Bankruptcy Code and Bankruptcy Rules 3022 and 5009 closing the Bankruptcy Case after the Estate has been fully administered.

**1.39** "Final Order" means an Order or judgment of the Bankruptcy Court that is no longer subject to appeal or certiorari proceedings and as to which no appeal or *certiorari* proceeding is pending.

**1.40** "Holder" means the holder of a Claim or Interest, as applicable.

**1.41** "Impaired Class" means any Class whose members are Holders of Claims or Interests that are impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.42** "Insider" means "insider" as such term is defined in section 101(31) of the Bankruptcy Code.

**1.43** "Intellectual Property" means any and all interests the Debtor maintains in intellectual property of any kind, including but not limited to patents, trademarks, and copyrights, as more fully described in the Debtor's Schedules.

**1.44** "Landlord Settlement" means the settlement agreement reached between the Debtor and the Victory Blvd Landlord as contemplated in the *Debtor's Motion for the Entry of an Order Authorizing Debtor to Enter Into Proposed Settlement Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure* [Dkt. No. 45], which is pending approval of the Bankruptcy Court.

**1.45** "Lease 1" means the month-to-month oral agreement between the Debtor and the Victory Blvd Landlord with respect to the Staten Island Premises.

**1.46** "Lease 2" means the annual written lease between the Debtor and the Regus Landlord with respect to the Suffern Premises, commenced April 1, 2025.

**1.47** "Liquidation Analysis[1]" means the Debtor's projections as to the recoveries of Holders of Claims and Interests in a hypothetical liquidation, annexed hereto as **Exhibit "C"**, as

---

[1] The Debtor is in the process of retaining appraisers in order to properly value the Debtor's Assets. As a result, a full Liquidation Analysis is forthcoming.

may be amended, supplemented, or restated from time to time, and in the event of such amendment, supplementation, or restatement, as filed on the docket of the Bankruptcy Court.

**1.48** "Order" shall mean a determination, decree, adjudication or judgment issued or entered by the Bankruptcy Court.

**1.49** "Person" means "person" as such term is defined in section 101(41) of the Bankruptcy Code.

**1.50** "Petition Date" means January 7, 2025, the date on which the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

**1.51** "Plan" means this Chapter 11 Plan of Reorganization, as may be amended from time to time, in accordance with the terms hereof or in accordance with the Bankruptcy Code.

**1.52** "Plan Payment(s)" means any Payment made pursuant to the terms of the Plan.

**1.53** "Prepetition" means the period of time preceding the Petition Date and concluding on the Petition Date.

**1.54** "Priority Claim" means an Unsecured Claim, other than an Administrative Claim, to the extent such Unsecured Claim is entitled to priority in payment under section 507 of the Bankruptcy Code.

**1.55** "Priority Tax Claim" means every Unsecured Claim or portion thereof that is entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

**1.56** "Priority Unsecured Claim" means every Unsecured Claim or portion thereof that is not an Administrative Claim or a Priority Tax Claim, and that is entitled to priority under any applicable provision of section 507 of the Bankruptcy Code.

**1.57** "Pro Rata" means proportionate, and when applied to a Claim means the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of consideration distributed on account of all Allowed Claims in such Class.

**1.58** "Professional" means: (i) any professional retained by the Debtor in the Bankruptcy Case pursuant to an order of the Bankruptcy Court in accordance with section 327 or 1103 of the Bankruptcy Code; (ii) any attorney or accountant seeking compensation or reimbursement of expenses pursuant to section 503(b) of the Bankruptcy Code; and (iii) any entity whose fees and expenses are subject to approval by the Bankruptcy Court as reasonable pursuant to section 1129(a)(4) of the Bankruptcy Code.

**1.59** "Professional Fee(s)" means the Administrative Claims for compensation and reimbursement submitted pursuant to section 328, 330, 331, or 503(b) of the Bankruptcy Code of Professionals (i) employed pursuant to an order of the Bankruptcy Court under sections 327 or 328

of the Bankruptcy Code; or (ii) for whom compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b) of the Bankruptcy Code or by other Final Order.

1.60    "Projected Disposable Income" means the Debtor's projections of its Disposable Income, attached hereto as "**Exhibit B**", as may be amended, supplemented, or restated from time to time, and in the event of such amendment, supplementation, or restatement, as filed on the docket of the Bankruptcy Court.

1.61    "Proof of Claim" means the form filed in the Bankruptcy Court by a Creditor on which the specifics of a Claim are set forth as required by the Bankruptcy Code and the Bankruptcy Rules.

1.62    "Property of the Estate" means "property of the estate" as such term is defined in section 541 of the Bankruptcy Code.

1.63    "Regus Landlord" means Regus Management Group, LLC, the landlord with respect to the Suffern Premises.

1.64    "Related Party" means, with respect to any Entity, in each case in its capacity as such with respect to such Entity, such Entity's current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, participants, successors, assigns, subsidiaries, affiliates, partners, limited partners, general partners, principals, members, management companies, employees, agents, trustees, attorneys, accountants, investment bankers, consultants, representatives, and other professionals and advisors.

1.65    "Released Parties" means the Debtor.

1.66    "Reorganized Debtor" means the Debtor upon the Effective Date of the Plan.

1.67    "Schedules" means the schedules of assets and liabilities and any amendments thereto filed by the Debtor with the Bankruptcy Court in accordance with section 521(1) of the Bankruptcy Code.

1.68    "Security Interest" means "security interest" as such term is defined in section 101(51) of the Bankruptcy Code.

1.69    "Shareholder Unsecured Claims" means the Unsecured Claims of any Equity Interests of the Debtor, including but not limited to the Claims of Christopher Bender, Melissa Pinto, and MMP Development LLC (Proof of Claim No. 2), Neil Sanft (Proof of Claim No. 4), Madelyn Sanft (Proof of Claim No. 5), and Martin Trautmann (Proof of Claim No. 7).

1.70    "Staten Island Premises" means the Debtor's prior office space, at 4366A Victory Boulevard, Staten Island, New York 10314.

**1.71**    "<u>Steveline Parties</u>" means Steven P. D'Angelo & Steveline, Inc., whom jointly filed Proof of Claim No. 9.

**1.72**    "<u>Subchapter V Trustee</u>" means the subchapter V trustee appointed pursuant to section 1183 of the Bankruptcy Code, Nathaniel Wasserstein, Esq.

**1.73**    "<u>Suffern Premises</u>" means the Debtor's current office space, at 400 Rella Blvd, Suite 165, Suffern, New York 10901.

**1.74**    "<u>Unsecured Claim</u>" means every Claim or portion thereof, regardless of the priority of such Claim, which is not a Secured Claim.

**1.75**    "<u>United States Trustee</u>" shall have the meaning ascribed to it in 28 U.S.C. § 581, *et seq*. and, as used in the Plan, means the Office of the United States Trustee for Region 2 located in the Eastern District of New York, Brooklyn Division.

**1.76**    "<u>Victory Blvd Landlord</u>" means 4366A Victory Blvd LLC, the landlord with respect to the Staten Island Premises.

**ARTICLE II**

**<u>DESIGNATION OF CLASSES</u>**

All Holders of Claims and Equity Interests against or in the Debtor, of whatever kind or nature, whether or not scheduled or liquidated, absolute or contingent, whether Allowed or not, shall be bound by the provisions of the Plan and are hereby classified as follows[2]:

**2.01**    **Class 1: Class 1 shall consist of the Allowed Secured Claim of New York State Department of Taxation and Finance**

**2.02**    **Class 2: Class 2 shall consist of the DIP Loan of the Steveline Parties**

**2.03**    **Class 3: Class 3 shall consist of Allowed general Unsecured Claims**

**2.04**    **Class 4: Class 4 shall consist of the Allowed Secured Claim of the Steveline Parties**

**2.05**    **Class 5: Class 5 shall consist of the Allowed Shareholders Unsecured Claims**

**2.06**    **Class 6: Class 6 shall consist of the Equity Interests in the Debtor**

Creditors which either (i) were included on the Debtor's Schedules as contingent, unliquidated, or disputed, and which did not file a Proof of Claim; (ii) failed to file a Proof of Claim on or before the Bar Date; (iii) filed duplicative Proofs of Claims; or including but not

---

[2] Secured Claims are listed by the priority of their Allowed liens.

limited to (iv) failed to annex documentation in support of its Proof of Claim, are excluded from the Classes. The Debtor shall object to such Disputed Claims and either resolve or have such claims Disallowed or Allowed by Order of the Bankruptcy Court.

Further, in accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes. Additionally, as this case is a case under Subchapter V of Chapter 11, there are no United States Trustee Fees to be paid by the Debtor's Estate.

## ARTICLE III

## TREATMENT OF CLAIMS AND EQUITY INTERESTS UNDER THE PLAN

**3.01    Class 1:** Class 1 consists of the Allowed Secured Claim of New York State Department of Taxation and Finance. In accordance with section 1129(a)(9)(D) of the Bankruptcy Code, the Class 1 Claimant shall receive regular cash payments of a total value, as of the Effective Date, equal to its Allowed Claim, over a period ending not later than five (5) years following the Petition Date. The Class 1 Claimant is unimpaired under this Plan and is not entitled to vote on the Plan.

**3.02    Class 2**: Class 2 will consist of the Allowed Claim of the Steveline Parties in connection with the DIP Loan. The Debtor and the Steveline Parties are still negotiating the terms of the proposed DIP Loan and the Plan will be amended to reflect the final agreement of the parties.

**3.03    Class 3:** Class 3 consists of Allowed general Unsecured Claims. The total amount of general Unsecured Claims will be approximately $703,511.09, inclusive of filed Proofs of Claims and the Debtor's Schedules[3]. In full and final satisfaction of these Claims, each Class 3 Claimant shall receive a Pro Rata share of the Debtor's Disposable Monthly Income of their Allowed Claim amount. This Distribution will be paid in equal quarterly installments over a period of three (3) years, commencing on the Effective Date. The Class 3 Claimants are impaired under this Plan and are entitled to vote for the Plan.

**3.04    Class 4:** Class 4 consists of the Allowed Secured Claim of the Steveline Parties. In accordance with section 510(b) of the Bankruptcy Code, because the claim of the Steveline Parties arose in connection with the purchase or sale of a security of the Debtor, or of an affiliate of the Debtor, or for damages which arose from the purchase or sale of such security, the Allowed Secured Claim of the Steveline Parties is mandatorily subordinated below the claims of Allowed general Unsecured Claims and shall share, *pro rata* with the Claims in Class 5. However, in exchange for the DIP financing set forth in Class 2, which shall also allow a portion of this claim, Distributions to Class 4 Claimants will be contingent upon Class 3 Claimants receiving one hundred percent (100%) of their respective claims. The Class 4 Claimants are impaired under this Plan and are entitled to vote for the Plan.

**3.05    Class 5:** Class 5 consists of the Allowed Shareholders Unsecured Claims. The total amount of Shareholders Unsecured Claims will be approximately $1,391,475.00, inclusive of filed

---

[3] Excluding Claims listed in the Debtor's Schedule as contingent, unliquidated, and/or disputed.

Proofs of Claims and the Debtor's Schedules[4]. In accordance with section 510(b) of the Bankruptcy Code, because the Shareholders Unsecured Claims arose in connection with the purchase or sale of a security of the Debtor, or of an affiliate of the Debtor, or for damages which arose from the purchase or sale of such security, the Shareholders Unsecured Claims are mandatorily subordinated below the claims of Allowed general Unsecured Claims. Distributions to Class 5 Claimants will be contingent upon Class 3 Claimants receiving one hundred percent (100%) of their respective claims. The Class 5 Claimants are impaired under this Plan and are entitled to vote for the Plan.

      **3.06    Class 6:** Class 6 consists of Equity Interests in the Debtor. On the Effective Date, all Equity Interest Holders in the Debtor shall retain their existing equity interests in the Debtor. The Equity Interests shall remain unaltered, subject to any modifications necessary to comply with applicable law or the provisions of this Plan. Class 6 Claimants are unimpaired and are not entitled to vote on the Plan.

      **3.07    <u>Administrative Claims of the Debtor and the Debtor's Professionals</u>:** The Allowed Administrative Claims of the Debtor and the Debtor's Professionals are unimpaired and shall be paid in full by the Debtor within 30 days after the Effective Date, or upon the approval of a Professional Fee application, even if estimates fall below actual awarded amounts, or such later date after approval by the Court after notice and a hearing.

      **3.08    <u>Administrative Claims Other than the Debtor and the Debtor's Professionals</u>:** Allowed Administrative Claims (other than Claims of the Debtor and the Debtor's Professionals), to the extent that any such Claims exist, are unimpaired and shall be paid in full by the Debtor within 30 days after the Effective Date, or upon the approval of a Professional Fee application, even if estimates fall below actual awarded amounts, or such later date after approval by the Court after notice and a hearing. It is anticipated that an Administrative Claim under this section of the Plan will come from the Subchapter V Trustee.

      **3.09    <u>Priority Tax Claims</u>:** Allowed Priority Tax Claims pursuant to section 507(a)(8) of the Bankruptcy Code are unimpaired and shall be paid in full by the Debtor as required by section 1129(a)(9) over a period not later than five (5) years after the Petition Date. The sole Priority Tax Claim at this time includes the claim of the Internal Revenue Service filed under Proof of Claim No. 6.

      **3.10    <u>United States Trustee's Fees</u>:** As this case is a case under Chapter 11, Subchapter V of the Bankruptcy Code, there are no United States Trustee's Fees.

---

[1] The Debtor is in the process of retaining a gemologist to properly appraise the Debtor's current inventory. Upon receipt of such valuation, the Debtor shall promptly amend the Liquidation Analysis accordingly.

## ARTICLE IV

## MEANS FOR FUNDING AND
## IMPLEMENTATION OF THE PLAN

### 4.01    Means for Implementation of the Plan

The Plan contemplates that the Debtor will continue to manage and operate its business in the ordinary course but with restructured debt obligations. The Debtor anticipates using profits generated from operations to make its Plan Payments and meet its post-confirmation operating expenses.

The projections demonstrating the availability of Disposable Income are attached hereto as **Exhibit B.** These projections demonstrate that approximately $315,350.00 will be available over the three years following Confirmation. The Debtor anticipates making a distribution of approximately $5,000.00 on the Effective Date.

### 4.02    Plan Funding

The Plan will be funded by a combination of the Debtor's profits from its ongoing business operations. In addition, if necessary, the Debtor's principal, John W. Salvatore, anticipates making any necessary cash infusions to the Debtor to cover any shortfall in Plan Payments.

### 4.03    Professional Fee Bar Date

A date establishing a Professional Fee bar date will be included as part of the Confirmation Order, or by separate Order of the Court, which will be served upon all creditors and other parties in interest. Each Person seeking an award by the Bankruptcy Court of Professional Fees must file with the Bankruptcy Court and serve on the Reorganized Debtor and the United States Trustee's Office, its final application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by the Professional Fee Bar Date. Any holder which fails to file a timely request for the payment of a Professional Fee will forever be barred, estopped and enjoined from asserting such Professional Fee against the Debtor and the Reorganized Debtor.

### 4.04    Administrative Claim Bar Date

A date establishing an Administrative Claim Bar Date shall be included as part of the Confirmation Order, which shall be served upon all creditors and other parties-in-interest. All requests for payment of Administrative Expenses that accrued on or before the Confirmation Date must be filed with the Bankruptcy Court by the Administrative Claim Bar Date, except for Professional Fee Claims. Any holder of an Administrative Expense which fails to file a timely request for the payment of an Administrative Expense shall forever be barred, estopped and enjoined from asserting such Administrative Expense against the Debtor and Reorganized Debtor. The Debtor may object to the allowance of any Administrative Expense Claim.

**4.05**    **Transfer Taxes**

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, distribution, transfer or exchange of any security or the making, delivery, or recording of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan or any Plan document, or any transaction arising out of, contemplated by, or in any way related to the foregoing, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local government officials or agents shall be, and hereby are, directed to forego the collection of any such tax or governmental assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**4.06**    **Vesting of Assets**

The Debtor's Assets shall revest in the Reorganized Debtor on the Effective Date.

## ARTICLE V

## UNEXPIRED LEASES AND EXECUTORY CONTRACTS

**5.01**    **Assumption or Rejection of Unexpired Leases and Executory Contracts**

Pursuant to the Landlord Settlement, the Victory Blvd Landlord does not hold any claim for pre-petition nor post-petition arrears in connection with Lease 1, and during the pendency of the Bankruptcy Case, the Debtor has vacated the Staten Island Premises. A hearing on approval of the Landlord Settlement is scheduled for May 8, 2025 at 10:30 a.m.

In addition, during the pendency of the Bankruptcy Case, the Debtor began Lease 2, which is an annual lease for a virtual office at the monthly rent o $268.40.with the Regus Landlord with respect to the Suffern Premises.

All unexpired leases and executory contracts of the Debtor shall be assumed as part of the Plan upon Confirmation.

## VI

## LIQUIDATION ANALYSIS

**6.01**    As described in the *AMENDED DEBTOR'S PRE-STATUS CONFERENCE REPORT PURSUANT TO SECTION 1188(c) OF THE BANKRUPTCY CODE* [Dkt. No. 37], the Debtor faced certain administrative challenges at the onset of this case. Now that the Debtor has resolved all issues concerning the opening of a debtor-in-possession account and resolved any and all disputes with the Victory Blvd Landlord concerning the Staten Island Premises, the Debtor is in the process of retaining appraisers in order to properly value the Debtor's Assets. As a result, a full Liquidation Analysis is forthcoming.

## ARTICLE VII

## EFFECT OF CONFIRMATION; DISCHARGE OF CLAIMS; INJUNCTION; RELATED

**7.01    Effect of Confirmation; Discharge of Claims; Confirmation Injunction; Release; Exculpation**

On the Confirmation Date, the terms of the Plan shall bind all Holders of all Claims against, and Equity Interests in, the Estate, whether or not such Holders accepted the Plan. The rights afforded under the Plan and the treatment of all Claims under the Plan shall be in exchange for a complete satisfaction, discharge and release of Claims of any nature whatsoever, against the Estate or any of its Assets or property except as otherwise provided for herein and in the Plan. Except as otherwise provided herein and in the Plan, on the Confirmation Date, all such Claims against the Estate shall be satisfied, discharged and released in full, and all Persons or entities are precluded and enjoined from asserting against the Estate, the Debtor and/or its successors or their Assets, any other or further claims based upon any act, omission, transaction or other activity of any kind or nature that occurred before the Confirmation Date.

The Estate shall retain any and all claims and Causes of Action belonging to the Debtor and its Chapter 11 Estate, whether arising before or after the Petition Date, regardless of whether such claims and Causes of Action arise under the Bankruptcy Code. The Debtor may pursue any and all such Causes of Action. The Plan expressly provides that unless any claims and Causes of Action against an Entity are expressly and unambiguously waived, relinquished, exculpated, released, compromised, or settled in the Plan or in an Order, the Debtor expressly reserves all Causes of Action, for later prosecution, settlement, or adjudication and no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or a consequence of entry of the Confirmation Order, occurrence of the Effective Date, or consummation of the Plan.

**7.02    Preservation of Causes of Action**

Except as provided herein, the Estate shall retain any and all claims and Causes of Action belonging to the Debtor and its Estate, whether arising before or after the Petition Date, regardless of whether such claims and Causes of Action arise under the Bankruptcy Code.

The Debtor may, but is not required to, pursue any and all such Causes of Action. No Entity may rely on the absence of a specific reference in the Plan to any Cause of Action against it as any indication that the Debtor will not pursue any and all available Causes of Action against it. Unless any claims and Causes of Action against an Entity are expressly and unambiguously waived, relinquished, exculpated, released, compromised, or settled in the Plan or in an Order, the Debtor expressly reserves all Causes of Action, for later prosecution, settlement, or adjudication and no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or a consequence of entry of the Confirmation Order, occurrence of the Effective Date, or consummation of the Plan.

### 7.03    Confirmation Injunction

Effective on the Effective Date, all Persons who have held, hold or may hold Claims or Equity Interests are enjoined from taking any of the following actions against or affecting the Released Parties, the Debtor, the Estate, the Property or any other Assets of the Estate with respect to such Claims or Equity Interests, except as otherwise set forth in the Plan and other than actions brought to enforce any rights or obligations under the Plan or appeals, if any, from the Confirmation Order:

    i.    commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind against the Released Parties, the Debtor, the Estate, the Property or any other Assets of the Estate;

    ii.    enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, directly or indirectly, any judgment, award, decree, or order against the Released Parties, the Debtor, the Estate, the Property or any other Assets of the Estate;

    iii.    creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Released Parties, the Debtor, the Estate, the Property or any other Assets of the Estate;

    iv.    asserting any set-off, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation against the Released Parties, the Debtor, the Estate, the Property or any other Assets of the Estate; and/ or

    v.    proceeding in any manner in any place whatsoever that does not conform to or comply with the provisions of the Plan.

### 7.04    Discharge of Claims

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtor or any of its Assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan or voted to reject the Plan. The Confirmation Order shall be a

judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date, except as otherwise specifically provided in the Plan.

**7.05    Release**

**Except as otherwise set forth herein, effective as of the Effective Date, the Debtor is released from all Claims, Causes of Action, and demands of any nature whatsoever, in law and in equity, that any creditor of the Debtor had, has, or may hereafter have against the Debtor arising prior to the Effective Date. Except as otherwise provided herein and in section 1141 of the Bankruptcy Code, all Persons shall be precluded and enjoined from asserting against the Debtor, its assets or properties, or against any property that is distributed or is to be distributed under the Plan, any other or further Claim upon any acts or omissions, transactions, or other activity of any kind or nature that occurred prior to the Effective Date.**

**7.06    Release of Liens**

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other Security Interests against any Property of the Estate and, subject to the consummation of the applicable distributions contemplated in the Plan, shall be fully released and discharged, at the sole cost of and expense of the Reorganized Debtor, and the Holders of such mortgages, deeds of trust, Liens, pledges, or other Security Interests shall execute such documents as may be reasonably requested by the Debtor or the Reorganized Debtor, as applicable, to reflect or effectuate such releases, and all of the right, title, and interest of any Holders of such mortgages, deeds of trust, Liens, pledges, or other Security Interests shall revert to the Reorganized Debtor and its successors and assigns.

**7.07    Exculpation**

**Except as otherwise stated herein, the Exculpated Parties will not have or incur any liability to any Person for any act taken or omission occurring on or after the Petition Date through and including the Effective Date, in connection with this Case, including but not limited to:**

**(a) the commencement and administration of the Case;**

**(b) the formulation, preparation, dissemination, implementation, confirmation, consummation, or administration of: (i) the Plan (including soliciting acceptances or rejections thereof); and/or if applicable, (ii) a disclosure statement.**

**(c) any Distributions made pursuant to the Plan.**

**Nothing in this section shall: (a) affect the liability of any Exculpated Party that otherwise would result from any act or omission to the extent that the act or omission is determined in a Final Order to have resulted from fraud, willful misconduct, gross**

**negligence, or criminal conduct; or (b) limit liability pursuant to Rule 1.8(h)(1) of the New York Rules of Professional Conduct.**

### 7.08    Protection Against Discriminatory Treatment

In accordance with section 525 of the Bankruptcy Code, and consistent with paragraph 2 of Article VI of the United States Constitution, no Governmental Unit shall discriminate against the Reorganized Debtor, or the Entity with which a Reorganized Debtor has been or is associated, or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtor, or another Entity with whom the Reorganized Debtor has been associated, solely because such Reorganized Debtor was a Debtor under Chapter 11, may have been insolvent before the commencement of the Chapter 11 Case (or during the Chapter 11 Case but before such Debtor was granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Case.

### 7.09    Recoupment

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim or Interest against any claim, right, or Cause of Action of the Debtor or the Reorganized Debtor, as applicable unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtor on or before Confirmation, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

### 7.10    Reimbursement or Contribution

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the Effective Date, such Claim shall be forever disallowed notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Effective Date (1) such Claim has been adjudicated as non-contingent or (2) the relevant Holder of a Claim has filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered determining such Claim as no longer contingent.

## ARTICLE VIII

## CLAIM AND DISTRIBUTION MATTERS

### 8.01    Allowance of Claims

All Claims in this Case will be reviewed, and to the extent necessary and appropriate, the Debtor will file objections to certain Claims. The Bankruptcy Court will retain jurisdiction to adjudicate objections to Claims brought by the Debtor, including any settlements or compromises of such Claims. The Debtor reserves all of its rights to object to Claims.

Any creditor who failed to file a proof of claim on or before the general bar date and was not listed on the Schedules, or was listed on the Schedules as "disputed," "contingent" or "unliquidated," cannot be treated as a creditor with respect to such Claim for purposes of voting on and receiving a Distribution under the Plan.

### 8.02    Time to File Objections to Claims

Objections to Claims, to the extent not already filed by the Debtor, must be filed and served by the Debtor no later than the one hundred and twentieth (120th) day after the Effective Date (or the next business day if the 120th day is a holiday or weekend day), or within such other extended time period as may be requested (with such application or motion being made prior to the expiration of the period) by the Debtor and fixed by the Bankruptcy Court.

### 8.03    Reserve for Disputed Claims

The Debtor shall hold in reserve: (a) 100% of any Disputed Claim that is an Administrative Claim or a Priority Claim; and/or (b) the Pro Rata portion of the general unsecured claims reserve of any Disputed Claim that is a general unsecured claim until such Claim is resolved by a Final Order or settled. Should the amount reserved by the Debtor on account of the Disputed Claim exceed the amount required to satisfy the Disputed Claim, any excess will be distributed in accordance with the Plan.

### 8.04    Allowance of Disputed Claims

If, on or after the Effective Date, any Disputed Claim becomes an Allowed Claim, the Debtor shall within fifteen (15) days after the later of: (x) the date on which the Claim becomes an Allowed Claim; and (y) when claims in the same Class are paid, or as soon thereafter as is practicable, pay to the Holder of such Allowed Claim the amount that such Holder would have been entitled to receive under the Plan if such Claim had been an Allowed Claim on the Effective Date.

### 8.05    Distribution Cap

Notwithstanding any language to the contrary herein, no Holder of an Allowed Claim shall receive in respect of that Claim any Distribution in excess of the Allowed amount of that Claim.

### 8.06    Undeliverable or Unclaimed Distributions

All Distributions under the Plan to any Holder of an Allowed Claim shall be made at the address of such Holder as set forth in the filed or scheduled Claim unless the Debtor has been notified in writing of a change of address. For a period of ninety (90) days subsequent to any Distributions made under the Plan, Unclaimed Property will be held by the Debtor for the Holders of Allowed Claims which have failed to claim such Distribution, and will be released by the Debtor and delivered to such Holder, without interest, upon presentation and proper proof by such Holder to the Debtor (in the sole and absolute discretion of the Debtor) of its entitlement thereto.

At the end of the ninety (90) days subsequent to any Distributions made under the Plan, all Unclaimed Property will be deposited by the Debtor (as applicable) with the Clerk of the Court, notwithstanding any provision to the contrary in the Plan, or any federal or state escheat laws to the contrary.

**8.07    Manner of and Minimum Distributions**

If a Distribution to be made to a given Holder of an Allowed Claim would be $5.00 or less, notwithstanding any contrary provision of the Plan, the Debtor shall not be required to make such Distribution to such Holder. Any unclaimed or retained Distributions shall be disbursed by the Debtor pursuant to the terms of the Plan. Distributions may be made by the Debtor by wire, electronic transfer, check or such other method as the Debtor deems appropriate under the circumstances.

**8.08    Rounding to the Nearest Dollar**

Any other provision of the Plan to the contrary notwithstanding, no payments of portions of a Dollar will be made. Whenever any payment of a portion of a Dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole Dollar (up or down).

**8.09    Withholding of Taxes**

The Debtor may withhold from any Distribution under the Plan any amount which must be withheld for taxes payable by the Entity entitled to such Distribution to the extent required by applicable law. As a condition to making any Distribution under the Plan, the Debtor may request that the Holder of any Allowed Claim provides such Holder's taxpayer identification number and such other certification as may be deemed necessary to comply with applicable tax reporting and withholding laws.

Notwithstanding any other provision of the Plan, each Entity receiving a Distribution pursuant to the Plan will have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on it by any governmental unit on account of such Distribution, including income, withholding and other tax obligations.

**ARTICLE IX**

**RETENTION OF JURISDICTION**

**9.01    Bankruptcy Court Jurisdiction**

Notwithstanding entry of the Confirmation Order, occurrence of the Effective Date, substantial consummation of the Plan, the Case having been closed, or a Final Decree having been entered, the Bankruptcy Court (or the United States District Court for the Eastern District of New York, as the case may be) shall have and retain exclusive jurisdiction of matters arising out of, and

related to the Case and the Plan under, and for the purposes of, sections 105(a), 1142, 1144, and 1193 of the Bankruptcy Code and for, among other things, the following purposes:

(a) to hear and determine all Claims (including Administrative Claims) concerning the classification, allowance or disallowance of any such Claim, if any;

(b) to hear and determine any and all adversary proceedings, Causes of Action, claims of the Estate, applications, and contested matters, whether filed or commenced before or after the Effective Date;

(c) to hear and determine all Claims arising out of any agreement entered into by the Debtor after the Petition Date, if any;

(d) to hear and determine applications for the assumption or rejection of Executory Contracts, if any, and allowance of Claims resulting therefrom;

(e) to hear and determine any settlement and/or compromise pursuant to Bankruptcy Rule 9019 concerning any of the foregoing;

(f) to alter, modify and amend the Plan pursuant to section 1193 of the Bankruptcy Code, or to remedy any defect, cure any omissions or reconcile any inconsistency in the Plan or Confirmation Order as may be necessary or advisable to carry out the purpose and intent of the Plan and to the extent authorized by the Bankruptcy Code or Bankruptcy Rules;

(g) to make such orders *ex parte* or upon application, and to hear and adjudicate any settlements or disputes concerning the provisions of the Plan, or to enforce and/or implement the terms of the Plan;

(h) to hear and determine such other matters as may be provided for in the Confirmation Order of the Bankruptcy Court, and for the purposes set forth in section 1193(b) and section 1142 of the Bankruptcy Code or as contained in Rules 1019 and 3020(d) of the Bankruptcy Rules;

(i) to hear and determine all applications for compensation;

(j) to hear and determine matters concerning local, state and federal taxes in accordance with sections 345, 505 and/or 1146 of the Bankruptcy Code;

(k) to enter a Final Order or decree concluding the Case or an order of substantial consummation;

(l) to hear and determine that distributions are accomplished as provided in the Plan; and/or

(m) to determine other matters contained in the Confirmation Order or Plan or that is authorized under the provisions of the Bankruptcy Code.

# ARTICLE X

## GENERAL PROVISIONS

### 10.01    Headings

The headings used in the Plan are inserted for convenience or reference only and neither constitute a portion of the Plan nor in any manner affect the provisions or interpretations of the Plan.

### 10.02    Interpretation; Application of Definitions; Rules of Construction

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained therein. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) unless otherwise specified, all references herein to "Sections" are references to Sections hereof or hereto; (d) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (e) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

### 10.03    Controlling Documents

The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided that, if there is determined to be any inconsistency between any Plan provision and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern and any such provision of the Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

### 10.04    Successors and Assigns

The rights and obligations of any Entity named or referred to in the Plan will be binding upon, and shall inure to the benefit of, the successors and assigns of such Entity.

### 10.05  Notices

Notices will be deemed given when received. All notices, requests or demands described in or required to be made in accordance with the Plan must be in writing and must be delivered personally or by registered or certified mail, return receipt requested, to:

<u>Counsel for the Debtor and the Reorganized Debtor</u>:

Law Offices of Avrum J. Rosen, PLLC
38 New Street
Huntington, New York 11743
Telephone: (631) 423-8527
Attn: Avrum J. Rosen, Esq.

<u>The Debtor and the Reorganized Debtor</u>:

JDS, Inc.
Attn: John W. Salvatore, President
400 Rella Blvd, Suite 165
Suffern, NY 10901

<u>The United States Trustee</u>:

Office of United States Trustee
Attn: Nazar Khodorovsky, Esq.
Eastern District of NY (Brooklyn)
Alexander Hamilton Custom House
One Bowling Green
Room 510
New York, NY 10004-1408
Telephone: (212) 206-2580

<u>The Subchapter V Trustee</u>:

Nathaniel Wasserstein, Esq.
Lindenwoord Associates, LLC
P.O. Box 181
Sparkill, NY 10976
845-398-9825

### 10.07  Change of Address

The Debtor may change the address at which it is to receive notices under the Plan by sending written notice pursuant to the provisions of this Article to the person to be charged with the knowledge of such change.

### 10.08    Post-Confirmation Reporting

The Debtor shall file quarterly status reports until the Chapter 11 case is closed.

### 10.09    Notice of Entry of Confirmation Order

Notice of Entry of the Confirmation Order shall be sufficient if a copy of a notice indicating that said order has been entered by the Bankruptcy Court, without attaching said order, is mailed or emailed to those Persons who had filed a notice of appearance and request for service of process in the Case and to Persons who file a new notice of appearance and demand for service of process dated subsequent to the Confirmation Date.

### 10.10    Effectuating Documents and Further Transactions

The Debtor shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements and take such other actions as may be necessary or desirable to effectuate and further evidence the terms and conditions of the Plan. All Holders of Claims or Equity Interests, including those receiving Distributions under the Plan, shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### 10.11    Governing Law

Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by, construed, and enforced in accordance with the laws of the State of New York.

### 10.12    Severability

In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision of the Plan is invalid, void, or unenforceable, the Bankruptcy Court shall, with the consent of the Debtor, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 10.13    No Admissions

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission by the Debtor with respect to any matter set forth herein, including, without limitation, liability on any Claim or the propriety of a Claim's classification.

**10.14**    **Entire Agreement**

Except as otherwise indicated, the Plan and the Confirmation Order supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

**10.15**    **Binding Effect of Plan**

Upon the Effective Date, all of the provisions of the Plan shall be binding on the Debtor, on all Holders of Claims, and on all other Entities who are affected (or whose interests are affected) in any manner by the Plan.

**10.16**    **References**

Unless otherwise specified, all references in the Plan to sections and Articles are to sections and Articles of the Plan.

**ARTICLE XI**

**AMENDMENTS, MODIFICATIONS AND REVOCATION**

**11.01**    **Amendment and Modification of Plan**

The Debtor reserves the right, in accordance with section 1193 of the Bankruptcy Code, to amend or modify the Plan provided the Bankruptcy Court approves such modification, if required.

*[Remainder of Page Intentionally Left Blank]*

**11.02   Revocation and Withdrawal Prior to Confirmation**

The Debtor may withdraw or revoke the Plan prior to the Confirmation Date. If such a withdrawal or revocation occurs, or if Confirmation does not occur, the Plan will be null and void. In such event, nothing contained in the Plan will constitute a waiver or release of any Claim by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any other person in any further proceedings involving the Debtor.

## CONCLUSION

The Debtor believes that the Plan is the best possible outcome for all parties in interest and would encourage the same who are entitled to do so to vote in favor of Confirmation of the Plan. The Debtor believes, as demonstrated by the Liquidation Analysis, that in the event the Plan was not confirmed and that the Debtor was required to liquidate in a Chapter 7 liquidation, parties in interest would be adversely affected, and recoveries would be dramatically reduced when compared to reorganization under this Plan.

Dated: April 4, 2025                          Respectfully submitted,
       Huntington, New York

                                            **Rosen, Tsionis & Pizzo, PLLC**
                                            ***f/k/a* Law Offices of Avrum J. Rosen, PLLC**
                                            *Counsel to the Debtor and Debtor in Possession*

                                  By:       */s/ Alex E. Tsionis*
                                            Alex E. Tsionis, Esq.
                                            Avrum J. Rosen, Esq.
                                            Daniel J. LeBrun, Esq.
                                            38 New Street
                                            Huntington, New York 11743
                                            Tel: (631) 423-8527
                                            atsionis@ajrlawny.com
                                            arosen@ajrlawny.com
                                            dlebrun@ajrlawny.com

Dated: April 4, 2025
       River Vale, New Jersey

                                            */s/ John W. Salvatore*
                                            John W. Salvatore
                                            President and Sole Director

# EXHIBIT

# "A"

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re:                                                                          Case No.: 25-40076-ess

JEWELRY DESIGNER SHOWCASE, INC.                          Chapter 11 (Subchapter V)
*d/b/a* DANNUNZIO DESIGNED,

                                                    Debtor.
-------------------------------------------------------------X

### DECLARATION OF JOHN W. SALVATORE
### PURSUANT TO E.D.N.Y. LBR 1007-4

Pursuant to 28 U.S.C. § 1746, I, John W. Salvatore, declare as follows under penalty of perjury:

1.       I am the president and sole director of Jewelry Designer Showcase, Inc., the debtor and debtor in possession in this Chapter 11 case (the "Debtor"). In that capacity, I am familiar with the Debtor's day-to-day operations, business, and financial affairs.

2.       This declaration is made pursuant to E.D.N.Y. LBR 1007-4 of the E.D.N.Y. Local Bankruptcy Rules to assist the Court and other parties in interest in understanding the circumstances that compelled the commencement of this Chapter 11 case and in support of the Debtor's petition for relief under Chapter 11 of Title 11 of the United States Code.

3.       Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge, my review of relevant documents, or my opinion based upon experience, knowledge, and information concerning the Debtor's operations, financial affairs and past history. If called upon to testify, I would testify competently to the facts set forth in this declaration. I am authorized to submit this declaration on behalf of the Debtor. Section I of this declaration provides an overview of the Debtor's business. Section II describes the circumstances giving rise to the

Debtor's commencement of this Chapter 11 case. Section III describes certain information required by LBR 1007-4 of the E.D.N.Y. Local Bankruptcy Rules.

## I. The Debtor's Business

4.      The Debtor is a Delaware corporation with its corporate office located at 4366A Victory Boulevard, Staten Island, New York 10314. The Debtor is a luxury jewelry designer and manufacturer formed in or around December 2010. The Debtor's business involves crafting globally patented, unique, beautiful, and innovative natural diamond jewelry. The Debtor's principal asset is its inventory and patents stored on-premises in a safe.

## II. Events Leading to the Chapter 11 Case

5.      The Debtor was founded by Arthur Dannunzio, who tragically passed away on June 22, 2024. Beyond the profound loss of Mr. Dannunzio, the Debtor faced an exceptionally challenging business environment driven by numerous external factors. Recovery from the COVID-19 pandemic remained slow, with lingering economic effects continuing to impact the Debtor. Compounding this, historically high inflation, global economic volatility, the war in Russia (which supplies over 85% of the world's diamonds), and conflicts in the Middle East caused severe supply chain disruptions. These challenges, entirely beyond the Debtor's control, created insurmountable obstacles despite the Debtor's well-considered business plans.

6.      The most significant setback for the Debtor arose from delays in receiving $75 million in funding from its capital partner, NOVA Family Office. The agreement, executed around March 27, 2024, promised funding in three tranches beginning in April 2024. However, due to reasons on NOVA's side, the funding was repeatedly delayed. Mr. Dannunzio received multiple assurances, both written and recorded, that the funding was imminent. These assurances, which continued after his passing, were reiterated to me through various means, including verbal, written,

and electronic communications. An addendum was executed to reaffirm NOVA's commitment to the funding, with assurances persisting as late as November 2024. Unfortunately, the funds never materialized, leaving the Debtor in an increasingly precarious position.

7.     When discussions about the NOVA partnership began with its principal, Cameron Curriden, a strategic decision was made to transition the Debtor from a business-to-business (B2B) model—selling to retailers across the United States—to a direct-to-consumer (D2C) model. The shift was designed to leverage NOVA's access to high-net-worth individuals (HNWIs) and establish the Debtor as a prominent e-commerce and consumer brand under the "Dannunzio" name, with plans for a future showroom. However, this strategic pivot required increased inventory to support anticipated sales. The delayed funding from NOVA left the Debtor unable to acquire the necessary inventory, further straining operations.

8.     Despite fulfilling all obligations under the executed agreement with NOVA, the Debtor has not received the promised funds. Communication with Mr. Curriden ceased after November 12, 2024, leaving the Debtor with no choice but to consider pursuing legal remedies. The Debtor believes NOVA may have engaged in fraudulent practices, causing substantial damage, and is now evaluating options to recover the funds or seek other appropriate relief.

9.     The funding delays had a cascading effect on the Debtor, triggering a series of adverse events. Lawsuits were filed against the company, and following Mr. Dannunzio's death, a restraining order was issued in connection with a prior $3.5 million judgment. This judgment could have been resolved had the NOVA funding arrived on time. The restraining notice effectively halted the Debtor's operations, eliminating revenue generation opportunities. As a result, the company's debt spiraled out of control, leaving accounts payable unmet and rendering 2024 a complete loss.

10.     In light of these circumstances, the Debtor now files this Chapter 11 case to restructure its debts in accordance with the Bankruptcy Code.

### III. <u>Information Required by E.D.N.Y. LBR 1007-4</u>

11.     In accordance with E.D.N.Y. LBR 1007-4(a)(i), and to the best of my knowledge, information, and belief, the Debtor is a small business debtor within the meaning of Bankruptcy Code § 101(51D).

12.     In accordance with E.D.N.Y. LBR 1007-4(a)(ii), and to the best of my knowledge, information, and belief, the Debtor is not a single asset real estate debtor within the meaning of Bankruptcy Code § 101(51B).

13.     In accordance with E.D.N.Y. LBR 1007-4, a list of the names and addresses of the creditors holding secured claims and the 20 largest unsecured claims against the Debtor have been filed with the Debtor's bankruptcy petition.[1]

14.     A summary of the Debtor's Assets and Liabilities are filed separately from the Debtor's petition. *See* Dkt No. 32.

15.     In accordance with E.D.N.Y. LBR 1007-4(a)(ix), and to the best of my knowledge, information, and belief, there are no stock, debentures, or other securities of the Debtor that are publicly held.

16.     In accordance with E.D.N.Y. LBR 1007-4(a)(x), and to the best of my knowledge, information, and belief, the Debtor does not have property in the possession or custody of any custodian.

---

[1] Official Form 204 filed with the Debtor's petition provides a list of the Debtor's creditors holding the 20 largest unsecured claims.

17.     In accordance with E.D.N.Y. LBR 1007-4(a)(xi), and to the best of my knowledge, information, and belief, Debtor's significant assets and books are held at 4366A Victory Boulevard, Staten Island, New York 10314.

18.     In accordance with E.D.N.Y. LBR 1007-4(a)(xv) and (xvi), and to the best of my knowledge, information, and belief, I am the sole person employed by the Debtor and I will not be taking a salary for the 30-day period post-petition.

19.     As of the drafting of this declaration, the Debtor anticipates that its operating income for the 30-day period following the bankruptcy petition will be approximately $5,000.00 with operating expenses to be approximately $5,000.00.

20.     The Debtor does not make any admissions and reserves all of its rights and remedies.

21.     The foregoing is true and current to the best of my knowledge, information and belief.

Dated: January 27, 2025                             */s/ John W. Salvatore*
           River Vale, New Jersey                        John W. Salvatore

# EXHIBIT "B"

## Exhibit B
## Projected Disposable Income

**Jewelry Designer Showcase Inc. d/b/a Dannunzio Designed**
**400 Rella Blvd, Suite 165**
**Suffern, New York 10901**
**EIN: *0557**

**3 Year - Profit & Loss Projections**

| | 2025 Tax Year (Projected) | 2026 Tax Year (Projected) | 2027 Tax Year (Projected) | 2028 Tax Year (Projected) |
|---|---|---|---|---|
| **Sales** | | | | |
| D2C | $ 90,000.00 | $ 550,000.00 | $ 735,000.00 | $ 940,000.00 |
| B2B | $ 90,000.00 | $ 350,000.00 | $ 515,000.00 | $ 605,000.00 |
| | | | | |
| **Total Sales** | $ 180,000.00 | $ 900,000.00 | $ 1,250,000.00 | $ 1,545,000.00 |
| | | | | |
| **Cost of Goods Sold** | | | | |
| Inventory | $ 12,500.00 | $ 55,500.00 | $ 110,000.00 | $ 60,000.00 |
| Re-Stock (D2C) | $ 30,000.00 | $ 195,000.00 | $ 250,000.00 | $ 450,000.00 |
| Re-Orders (B2B) | $ 37,500.00 | $ 175,000.00 | $ 250,000.00 | $ 295,000.00 |
| Displays/Promotional Material (B2B) | $ 1,500.00 | $ 10,450.00 | $ 10,450.00 | $ 11,000.00 |
| Shipping/Misc. | $ 1,500.00 | $ 4,550.00 | $ 4,550.00 | $ 4,550.00 |
| | | | | |
| **Total Cost of Goods Sold** | $ 83,000.00 | $ 440,500.00 | $ 625,000.00 | $ 820,550.00 |
| | | | | |
| **Gross Profit** | $ 97,000.00 | $ 459,500.00 | $ 625,000.00 | $ 724,450.00 |
| | | | | |
| **Operating Expenses** | | | | |
| Salary | $ 45,000.00 | $ 240,000.00 | $ 240,000.00 | $ 240,000.00 |
| Outside Services/Collaborations | $ - | $ 10,600.00 | $ 18,000.00 | $ 28,000.00 |
| Supplies | $ 700.00 | $ 3,600.00 | $ 3,600.00 | $ 3,600.00 |
| Marketing/Advertising | $ - | $ 60,000.00 | $ 48,000.00 | $ 48,000.00 |
| Car, delivery, and travel | $ 3,500.00 | $ 13,500.00 | $ 28,500.00 | $ 28,500.00 |
| Accounting and legal | $ 60,000.00 | $ 60,000.00 | $ 60,000.00 | $ 60,000.00 |
| Rent (Virtual Office) | $ 2,400.00 | $ 3,600.00 | $ 18,000.00 | $ 18,000.00 |
| Insurance | $ 4,000.00 | $ 10,200.00 | $ 10,200.00 | $ 10,200.00 |
| Taxes | $ - | $ 24,000.00 | | |
| Gift Box Units (D2C) | $ - | $ 1,500.00 | $ 36,000.00 | $ 36,000.00 |
| Misc. | $ 3,500.00 | $ 12,000.00 | $ 60,000.00 | $ 60,000.00 |
| | | | | |
| **Total Operating Expenses** | $ 119,100.00 | $ 439,000.00 | $ 522,300.00 | $ 532,300.00 |
| | | | | |
| **Operating/Net Income (Loss)** | $ (22,100.00) | $ 20,500.00 | $ 102,700.00 | $ 192,150.00 |

**\*\* For the avoidance of doubt, though Exhibit A includes projections of the Debtor's Projected Disposable Income for the entire year of 2028, the full amount of Projected Disposable Income will only be distributed to general unsecured Creditors for the duration of three (3) years beginning on the Effective Date. For example, if the Effective Date is September 1, 2025, then distributions would be paid for the period ending August 31, 2028.**

# EXHIBIT
## "C"

**Exhibit C**
**Liquidation Analysis**

| ASSETS | Estimated Liquidation Value as of the Date Hereof |
|---|---|
| Cash | $0.00 |
| Inventory | TBD[1] |
| Intellectual Property | TBD[2] |
| **TOTAL LIQUIDATION VALUE** | TBD |
| **DEBT (OTHER THAN GENERAL UNSECURED DEBT)** | |
| Secured Debt | $4,171,352.52 |
| Administrative: Chapter 7 | $10,000.00 |
| Administrative Chapter 11 (including Subchapter V Trustee) | $50,000.00 |
| Priority and Secured Tax Claims | $6,669.54 |
| **TOTAL DEBTS PAID BEFORE GUC CLAIMS** | **$4,238,022.06** |
| **AVAILABLE CASH FOR UNSECURED CREDITORS** | **TBD** |

---

[1] The Debtor is in the process of retaining a gemologist to properly appraise the Debtor's current inventory. Upon receipt of such valuation, the Debtor shall promptly amend the Liquidation Analysis accordingly.

[2] The Debtor is in the process of retaining an intellectual property appraiser to properly appraise the Debtor's interests in its Intellectual Property. Upon receipt of such valuation, the Debtor shall promptly amend the Liquidation Analysis accordingly.