**Rosen, Tsionis & Pizzo, PLLC**
38 New Street
Huntington, New York 11743
(631) 423-8527
Avrum J. Rosen, Esq.
Daniel J. LeBrun, Esq.

*Attorneys for Jewelry Designer Showcase, Inc.*
*Debtor and Debtor in Possession*

**Hearing Date: May 29, 2026**
**Hearing Time: 10:30 a.m.**
**Objection Deadline: May 22, 2026**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

In re:                                                        Case No.: 25-40076-ess

JEWELRY DESIGNER SHOWCASE, INC.                               Chapter 11 (Subchapter V)
d/b/a DANNUNZIO DESIGNED,

                                   Debtor.
----------------------------------------------------------------X
JEWELRY DESIGNER SHOWCASE, INC.
*d/b/a* DANNUNZIO DESIGNED,

                                   Plaintiff,

-against-                                                     Adv Proc. No.: 25-01120-ess

STEVELINE, INC., and
STEVEN P. D'ANGELO,

                                   Defendants.
----------------------------------------------------------------X

#### DEBTOR'S MOTION FOR THE ENTRY OF AN
#### ORDER AUTHORIZING DEBTOR TO ENTER INTO
#### PROPOSED SETTLEMENTS PURSUANT TO RULE 9019
#### OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

**TO:    THE HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

Jewelry Designer Showcase, Inc. *d/b/a* Dannunzio Designed, the debtor and debtor-in-

possession (the "Debtor"), by and through its attorneys, Rosen, Tsionis & Pizzo, PLLC,

respectfully submits this as and for its motion (the "Motion") seeking the entry of an order pursuant

to section 105(a) of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of

1

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (i) approving the proposed settlement agreement (the "Settlement Agreement") entered into by and between the Debtor on the one hand, and Steveline Inc. ("Steveline") and Steven P. D'Angelo ("D'Angelo", together with Steveline, the "Creditors", and collectively with the Debtor, the "Parties") on the other hand, and authorizing the Debtor to enter into same; and (ii) approving the proposed stipulation and order concerning cash collateral (the "Cash Collateral Stipulation", together with the Settlement Agreement, the "Agreements") entered into by and between the Debtor on the one hand, and the Creditors on the other hand, and authorizing the Debtor to enter into same; respectfully states as follows:

## PRELIMINARY STATEMENT

1.      This Motion is submitted by the Debtor for the purpose of approving the settlements as set forth in the Settlement Agreement and Cash Collateral Stipulation, and authorizing the Debtor to enter into the settlements.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this Court pursuant to 28 U.S.C. § 1408 *et seq*.

3.      The statutory basis for the relief requested herein is section 105(a) of the Bankruptcy Code and Rule 9019(a) of the Bankruptcy Rules.

## BACKGROUND

I.      **Procedural Background**

4.      On January 7, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code and elected to proceed under Subchapter V.

5.      The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or committee has been appointed in this case, except that Nathaniel Wasserstein, Esq. has been appointed as the Subchapter V Trustee.

6.      The Debtor is a Delaware corporation with its corporate office located at 400 Rella Blvd, Suite 165, Suffern, New York 10901. The Debtor is a luxury jewelry designer and manufacturer formed in or around December 2010. The Debtor's business involves crafting globally patented, unique, beautiful, and innovative natural diamond jewelry.

## II.     Dispute Between Creditors and Debtor

7.      Prior to the Petition Date, on February 20, 2023, D'Angelo, Steveline, SPG, Sheridan Group LLC, and Lawrence Rubin commenced an action against Arthur D'Annunzio (the Debtor's former President), the Debtor, PPAD Inc. & Associates, Paul Joseph DeVito, DeVito & DeVito, P.C., Sean Williams, Williams & Foster Consulting Group, LLC, and David Rosenblum (the "EDNY Defendants") by the filing of a complaint in the United States District Court for the Eastern District of New York, in an action entitled Steven P. D'Angelo et al. v. Arthur D'Annunzio et al, Case No. 2:23-01322-GRV-ARL (the "EDNY Action").

8.      Following mediation of the claims, on or about September 7, 2023, a Settlement Agreement, Escrow Agreement, and Mutual Releases (the "EDNY Settlement") was executed by D'Angelo, Steveline, SPG Sheridan Group LLC ("SPG"), PPAD Inc. & Associates ("PPAD"), the Debtor through its former president Arthur D'Annunzio ("D'Annunzio"), D'Annunzio individually, Sean Williams ("Williams"), Williams & Foster Consulting Group LLC ("WFCG"), David Rosenblum ("Rosenblum"), DeVito & DeVito P.C. ("D&D"), and Paul DeVito, Esq. ("DeVito").

9. Pursuant to the EDNY Settlement, on November 10, 2023, the Creditors recorded a UCC-1 financing statement against the Debtor and PPAD in the state of New York, bearing filing number 202311100425270 (the "UCC"), encumbering the Plaintiff's accounts receivable and inventory.

10. On January 8, 2024, the Debtor made the first payment under the EDNY Settlement to the Creditors in the amount of $200,000.00.

11. On March 2, 2025, the Defendants filed proof of claim number 9 (the "POC") in the Court's Claims Register, asserting a secured claim against the Debtor in the sum of $4,171,352.52 (the "Claim").

12. On July 22, 2025, the Defendants filed a complaint (the "PPAD Complaint") in the Supreme Court of the State of New York, County of Westchester, against PPAD, Williams, WFCG, D&D, DeVito, and others, entitled *Steven P. D'Angelo et al. v. PPAD Inc. & Associates et al.*, Index No. 56458/2025 (the "PPAD Action").

13. Pursuant to the PPAD Complaint, the Creditors generally seek recovery of funds from transferees of PPAD pursuant to New York State Debtor and Creditor Law to satisfy the debt owed to the Creditors under the EDNY Settlement and as otherwise set forth in the PPAD Complaint.

14. On October 2, 2025, the Debtor filed a complaint in the Bankruptcy Court against the Defendants, pursuant to sections 105, 510, 544, 547, 548 and 550 of the Bankruptcy Code (the "Adversary Complaint"), commencing the adversary proceeding entitled *Jewelry Designer Showcase, Inc. v. Steveline Inc. et al,* Adv. Proc. No. 25-01120-ess (the "Adversary Proceeding").

15. Pursuant to the Adversary Complaint, the Debtor seeks, among other things: (i) mandatory subordination of the Creditors' Claim pursuant to section 510(b) of the Bankruptcy

Code; and (ii) avoidance of the EDNY Settlement and $200,000.00 previously paid to the Defendants, and recovery thereof by the Debtor's estate.

16. The Creditors assert that they have defenses to the causes of action raised in the Adversary Complaint.

17. On November 5, 2025, the Court entered a stipulation and Order by and between the Debtor and Creditors extending the time for the Creditors to file an answer to the Adversary Complaint or otherwise move through and including December 9, 2025.

18. On November 25, 2025, the Court entered a stipulation and Order by and between the Debtor and Creditors further extending the time for the Creditors to file an answer to the Adversary Complaint or otherwise move through and including March 10, 2026, which was subsequently further extended by the Debtor in writing to April 21, 2026, and the Debtor has agreed to further extend such deadline from time to time.

19. The Creditors assert that, as a result of the EDNY Settlement and the UCC, the sale of the Debtor's pre-Petition Date inventory of gems is subject to the consent of the Creditors and/or Court approval pursuant to section 363(c) of the Bankruptcy Code (the "Cash Collateral Issue"); and

20. The Parties have negotiated at arms' length and reached a global agreement, subject to the Bankruptcy Court's approval, resolving the Adversary Proceeding, as well as the Cash Collateral Issue. The Parties have had the opportunity to consult with counsel of their respective choice in connection with the matters raised in this Settlement Agreement.

III.    **The Proposed Settlements**

21.  Subject to this Court's approval, the Parties have decided to resolve the Adversary Proceeding and the Cash Collateral Issue and entered into the proposed Settlement Agreement and

5

Cash Collateral Stipulation respectively.

22.    Preliminarily, it must be noted that each agreement is dependent upon the other, *ie.* the Settlement Agreement is null and void if the Cash Collateral Stipulation is not approved by the Court, and vice versa. The two agreements each provide related relief to the Parties as a whole and do not independently provide complete relief to the Parties.

**A.    The Settlement Agreement**

23.    Below is a summary of the integral parts of the Settlement Agreement. The Court and all interested parties are respectfully referred to the Settlement Agreement, which is annexed to the Motion as **Exhibit "A"**.

> **Settlement Consideration**. As consideration for resolving the Adversary Proceeding and for the releases set forth in Section 6 below, the Parties agree as follows:
>
> 2.01 Settlement Sum. The Defendants, jointly, shall pay the sum of twenty-five thousand dollars ($25,000) (the "Settlement Sum") to the Plaintiff.
>
> 2.02 Payment of Settlement Sum. The Settlement Sum shall be remitted to the Plaintiff within thirty (30) days after either entry of (i) an Order approving this Settlement Agreement or (ii) an Order approving the Cash Collateral, whichever occurs later if not entered simultaneously, by the Bankruptcy Court.
>
> 2.03 Treatment of the Defendants' Claim. The Defendants' Claim will be bifurcated and treated as follows:
>
> > a.    Secured Claim. The Defendants will hold an allowed secured claim in the aggregate amount of **$141,443.35** (the "Secured Claim"). The Secured Claim shall be payable by the Plaintiff on the first (1st) day of each month, commencing the first (1st) day of the month following entry of a final, non-appealable Order of the Bankruptcy Court approving this Settlement Agreement. The Secured Claim will accrue interest at 16% per annum on $141,443.35 amortized over three (3) years (the "Payment Period"), resulting in a monthly payment of principal and interest of approximately $4,972.73 (the "Monthly Payments") for a total of thirty-six (36) months. Notwithstanding anything to the contrary in this Settlement Agreement or the Cash Collateral Stipulation, the aggregate

6

amount of payments to be paid by the Plaintiff to the Defendants pursuant to this subparagraph shall be no less than $179,018.23.

b. <u>Nonpriority Unsecured Claim</u>. The Defendants will hold an allowed nonpriority unsecured claim in the aggregate amount of **$708,556.65**, which will be paid *pro rata* with other allowed general unsecured creditors pursuant to the Debtor's Plan, as shall be amended by the Debtor in accordance with the terms and provisions of this Settlement Agreement and the Cash Collateral Stipulation and in form and substance acceptable to the Defendants (as amended, the "<u>Amended Plan</u>"). The Defendants shall not be entitled to further amend their POC without the prior written consent of the Plaintiff, and any attempt to make such amendments will be null and void.

c. <u>Subordinated Claim</u>. The remainder of the Defendants' Claim (approximately **$3,321,352.52**) will be subordinated to the same priority as common stock equity holders of the Debtor pursuant to section 510(b) of the Bankruptcy Code.

d. In the event that either (i) the Amended Plan is not confirmed by the Bankruptcy Court, or (ii) the Debtor defaults in its obligations to the Defendants under the Amended Plan after being confirmed by the Bankruptcy Court, the Debtor shall be liable for the balance remaining of the Defendants' Claim, with credit for any payments remitted to the Defendants prior to the Debtor's default.

e. The Defendants' Claim shall be deemed allowed as set forth above. The Plaintiff and its bankruptcy estate waives, and shall be forever barred from asserting, any further objection or other challenge to the Defendants' Claim or, except as expressly provided in this Settlement Agreement, any right of setoff, recoupment, or other similar defense or reduction of liability against the Defendants on account of the Defendants' Claim.

2.04 <u>Defendants' Liens</u>. Provided that there are no uncured Events of Default under this Settlement Agreement or the Amended Plan (if confirmed by the Bankruptcy Court) continuing at such time, within five (5) business days of the Defendants' receipt of the final payment by the Plaintiff for the Secured Claim, the Defendants shall release any and all liens, claims, and encumbrances on the Plaintiff's assets and property (including but not limited to the UCC) by filing a UCC-3 termination statement and any other required releases, including, but not limited to, notices of lien release with state or county authorities where such liens or encumbrances are recorded. To the extent necessary, the automatic stay under section 362(a) of the

Bankruptcy Code shall be deemed modified solely to permit the Defendants to take any and all actions necessary to effectuate the terms of this Settlement Agreement.

2.05 Chapter 11 Plan Benchmarks.

    a.   Within **thirty (30) calendar days** after execution of this Settlement Agreement and the Cash Collateral Stipulation (whichever occurs later if not executed simultaneously), the Plaintiff shall file the Amended Plan consistent with the terms of this Settlement Agreement and the Cash Collateral Stipulation. Before filing the Amended Plan, the Debtor will provide a draft copy to the Defendants for review and approval, which approval will not be unreasonably withheld.

    b.   Within **sixty (60) calendar days** after entry of final Orders of the Bankruptcy Court approving the Settlement Agreement and the Cash Collateral Stipulation (whichever occurs later if not entered simultaneously), the Plaintiff will confirm the Amended Plan consistent with the terms of this Settlement Agreement and the Cash Collateral Stipulation.

2.06 Chapter 11 Plan Voting. The Defendants will support and vote in favor of confirmation of the Plaintiff's Amended Plan, as may be further amended from time to time, with any such further amendments or modification subject to the Defendants' review and approval, so long as the Amended Plan complies with the terms and conditions and spirit of this Settlement Agreement and the Cash Collateral Stipulation.

2.07 Withdrawal of Adversary Proceeding. No later than five (5) days entry of a final and non-appealable Order of the Bankruptcy Court approving this Settlement Agreement, the Plaintiff shall file a Notice of Dismissal with Prejudice in the Adversary Proceeding.

2.08 Authorization to Name Plaintiff as Nominal Defendant (Limited Purpose) Upon Defendants' Election.

    a.   Subject to the conditions in this provision, the Debtor consents to being named by the Defendants as a nominal defendant in the PPAD Action solely to the extent the Defendants reasonably determine, in good faith, that such naming is required or advisable to (i) comply with applicable procedural rules, (ii) preserve or perfect jurisdiction, (iii) obtain complete relief, or (iv) satisfy a court order or directive in the PPAD Action. For purposes of clarity, the Defendants shall be authorized, but not directed or obligated to name the Debtor as a nominal defendant in the PPAD Action in the Defendants' sole discretion. The provisions of this Section 2.08 shall apply only if the Defendants so elect to name the Debtor as a nominal defendant in the PPAD Action. The election by the

8

Defendants to name the Debtor shall be without prejudice to, or waiver of, and rights and remedies of the Defendants in the PPAD Action, except as otherwise expressly set forth in this Paragraph 2.08.

b.  The Defendants shall not assert, and shall not seek to assert, any claim for damages, penalties, fees, costs, or other monetary or coercive relief against the Debtor in the PPAD Action, except to the extent a court of competent jurisdiction within the Second Circuit or the State of New York expressly requires such pleading solely as a procedural formality and the Defendants simultaneously disclaim substantive relief against the Debtor.

c.  Naming the Debtor as Nominal Defendant under this provision is not, and shall not be argued to be, an admission of liability, wrongdoing, or jurisdictional fact by either Party, and shall not be used to expand, revive, or create any released, waived, or settled claim between the Parties.

d.  The Defendants shall use commercially reasonable efforts to identify the Debtor as Nominal Defendant in the caption and allegations as a *nominal* or *necessary* party only, and to include an express statement that no substantive relief is sought from the Debtor as Nominal Defendant, except as required by the court.

e.  If service is required, the Debtor, as Nominal Defendant, shall accept service through counsel (if represented) or as otherwise reasonably designated in writing. The Debtor, as Nominal Defendant, may (but is not required to) enter a limited appearance, move to dismiss, or seek other relief consistent with nominal status, provided such actions do not materially prejudice the Defendants' ability to prosecute or defend the PPAD Action.

f.  The Debtor shall provide reasonable cooperation consistent with nominal status, including executing customary acknowledgments, stipulations, or declarations that (i) confirm nominal status, (ii) disclaim substantive interest (if accurate), and (iii) facilitate dismissal or termination of the Debtor as Nominal Defendant at the earliest procedurally appropriate time, in each case to the extent reasonably requested in writing and not requiring the Debtor as Nominal Defendant to admit fault or incur material unreimbursed expense.

g.  Unless otherwise required by a court order, the Defendants shall be responsible for the Debtor's reasonable, documented out-of-pocket costs incurred solely due to being named as a Nominal Defendant (including reasonable attorneys' fees for a limited appearance), provided that (i) the Debtor as Nominal Defendant gives prompt written notice

9

and reasonable detail of such costs, (ii) the Defendants as Naming Party have a reasonable opportunity to mitigate or avoid such costs, (iii) such costs are not caused by the Debtor 's breach of this provision; and (iv) such costs are not related to any steps taken by the Debtor which are prejudicial to the Defendants or the claims asserted by the Defendants in this PPAD Action.

h.  Before naming the Debtor as a Nominal Defendant (or, if not practicable, promptly thereafter), the Defendants shall provide written notice stating: (i) the proposed caption and the specific relief sought (confirming none is sought from the Nominal Defendant), and (ii) any anticipated service or appearance deadlines.

i.  All notices under this provision shall be in writing and delivered by hand, facsimile, registered mail, or electronic mail to the address last provided by the receiving Party in writing; either Party shall advise the other in writing of any change of address for notice purposes. Notice is effective upon delivery as evidenced by receipt, transmission confirmation, or postal record, as applicable.

j.  For the avoidance of doubt, the Plaintiff does not waive any rights or causes of actions it holds or may hold as against any parties to the PPAD Action pursuant to Chapter 5 of the Bankruptcy Code, and any such rights are explicitly preserved and reserved by the Plaintiff.

2.09 <u>Contingency of Settlement</u>. This Settlement Agreement is contingent in all respects upon approval by the Bankruptcy Court of: (i) the Settlement Agreement; and (ii) the Cash Collateral Stipulation. For the avoidance of doubt, should this Settlement Agreement be approved, but not the Cash Collateral Stipulation, this Settlement Agreement will be of no force and effect.

**Mutual Releases.** Except as provided herein, upon the orders approving this Settlement Agreement and the Cash Collateral Stipulation becoming final and non-appealable (whichever occurs later), the Parties shall be deemed to have, and shall have, released and forever discharged each other Party and their respective current attorneys, advisors, consultants, professionals, members, officers, employees and agents, and their successors and assigns from any and all claims and causes of action, of whatever kind, nature, character and description, whether in law or equity, whether in tort, contract or under other applicable law, whether known or unknown, whether liquidated or unliquidated, whether contingent or fixed, and whether anticipated or unanticipated, which Parties have, had, may ever had, or may ever claim to have, against each other Party arising from or related to the EDNY Action, the EDNY Settlement, the POC, the Cash Collateral Issue, and the Adversary Proceeding (collectively, the "<u>Releases</u>").

**No Third-Party Beneficiaries**. The Parties expressly agree that the releases set forth in Paragraph 6 above are made solely for the benefit of the Parties and their respective permitted successors and permitted assigns, and that **no third-party is an intended or unintended third-party beneficiary** of the Releases or of any rights, benefits, protections, defenses, limitations, or immunities arising from or relating to the Releases except as explicitly set forth herein.  Without limiting the provisions of this Section 7 of the Settlement Agreement, this Settlement Agreement and its terms and provisions shall not be cited or referred to by any party as an admission by Defendants that the Debtor or the Debtor's bankruptcy estate have valid claims against them and shall not prejudice any rights, remedies or claims of the Defendants against any third-party for any reason or in any capacity.

7.01. No Rights or Remedies. Nothing in the Releases (or elsewhere in this Settlement Agreement), whether express or implied, shall be construed to confer upon any third-party any legal or equitable right, benefit, claim, remedy, defense, or cause of action of any nature whatsoever by reason of the Releases or this Settlement Agreement, and no third-party shall have any right to enforce, directly or indirectly, any term of the Releases or this Settlement Agreement.

7.02 No Reliance; No Expansion. The Parties further agree that (a) no third-party has relied, or is entitled to rely, on the Releases, and (b) the Releases shall not be interpreted to expand, create, revive, or preserve any right, defense, or limitation for any third-party, including any argument that a third-party is released, discharged, or otherwise protected by the Releases.

7.03 No Discharge of Third-Party Obligations. Without limiting the foregoing, nothing in the Releases or this Settlement Agreement is intended to, and nothing herein shall, relieve, discharge, impair, or otherwise affect any obligation or liability that any third-party may have to either Party, or that either Party may have to any third-party.

7.04 No Subrogation or Derivative Enforcement. No third-party shall have any right of subrogation, derivative enforcement, assignment-by-operation-of-law, or similar right to assert, enforce, or benefit from the Releases, and each Party may assert this clause as a complete defense to any attempt by a third-party to claim beneficiary status or enforcement rights under the Releases or this Settlement Agreement.

7.05 Exclusive Enforcement by the Parties. Only the Parties (and, if applicable, their respective permitted successors and permitted assigns) may enforce the Releases and this Settlement Agreement, and the Parties intend that any enforcement, interpretation, or application of the Releases shall be determined solely as between the Parties in accordance with this Settlement Agreement.

**Proofs of Claim.**   The Defendants shall not file any further proofs of claim in the Bankruptcy Cases without the Debtor's prior written consent. For purposes of clarity, pursuant to this Settlement Agreement, the Defendants shall have (i) an allowed secured claim in the amount of $141,443.35; (ii) an allowed nonpriority unsecured claim in the amount of $708,556.65; and (iii) an allowed subordinated claim in the amount of $3,321,352.52.

**Default**.

   10.01   Events of Default by Defendants.   The occurrence of any one or more of the following events or conditions shall constitute an Event of Default by the Defendants under this Settlement Agreement:

   a) Any failure by the Defendants to make payment of the Settlement Sum to the Plaintiff pursuant to Section 2.02 of this Settlement Agreement when such payment becomes due and payable which remains uncured for more than five (5) business days after written notice to the Defendants and Defendants' counsel by the Plaintiff.

   10.02   Events of Default by Plaintiff.   The occurrence of any one or more of the following events or conditions shall constitute an Event of Default by the Plaintiff under this Settlement Agreement:

   a) Any failure by the Plaintiff in connection with this Settlement Agreement or the Amended Plan (if approved by the Bankruptcy Court) to make payment of principal or interest when such payment becomes due and payable which remains uncured for more than five (5) business days after written notice to the Plaintiff and Plaintiff's counsel by the Defendants. For purposes of clarity, interest calculated in accordance with this Settlement Agreement shall continue to accrue on any amounts owed during the pendency of any cure period set forth in this subparagraph and the Plaintiff is obligated to cure such interest accrual simultaneously with any cure payment due hereunder.

   b) Failure by the Plaintiff to meet the benchmarks for confirmation of the Amended Plan under Section 2.05 of this Settlement Agreement (except if such failure is due to the lack of available hearing dates with the Bankruptcy Court), without the prior consent of the Defendants, which consent will not be unreasonably withheld.

   c) The entry by the Bankruptcy Court of an order authorizing the appointment of an interim or permanent trustee in the Bankruptcy Case (other than the Subchapter V Trustee) or the appointment of an examiner in the Bankruptcy Case with expanded powers to operate or manage the financial affairs, business, or reorganization of the Debtor.

12

d)  The Debtor's Bankruptcy Case shall be converted from a case under chapter 11 of the Bankruptcy Code to a case under chapter 7 of the Bankruptcy Code.

e)  An order dismissing the Bankruptcy Case shall have been entered.

## B.    The Cash Collateral Stipulation

24.    Below is a summary of the integral parts of the Cash Collateral Stipulation. The Court and all interested parties are respectfully referred to the Cash Collateral Stipulation which is annexed to the Motion as **Exhibit "B"**.

Use of Cash Collateral.

i.   The Debtor shall not use, sell or lease any Cash Collateral except (i) upon the terms and conditions set forth in this Stipulation and Agreed Order or (iii) as otherwise approved by this Court.

ii.  The Debtor is authorized, subject to the terms and conditions of this Stipulation and Agreed Order to use, sell or lease Cash Collateral in the ordinary course of business during the period from the entry of this Stipulation and Agreed Order through the Termination Date (as defined below) to fund the Debtor's business.

Adequate Protection.  To the extent of Debtor's use of Cash Collateral and any diminution in value of the Collateral, the Secured Creditor is granted the following as adequate protection for the Adequate Protection Obligations:

Adequate Protection Liens.  Pursuant to Sections 361(2), 363(c)(2) and 363(e) of the Bankruptcy Code, on account of Debtor's use of Cash Collateral and diminution in value of the Collateral, the imposition of the Automatic Stay, or the use, sale, or lease of the Collateral, valid, binding, continuing, enforceable and perfected non-avoidable first-priority security interests in, and liens on (the "**Postpetition Liens**"), all of the Debtor's now owned or hereafter acquired accounts receivable and inventory, including all of the Collateral, and all proceeds, products, and revenues of any and all of the foregoing, along with any property acquired postpetition that forms part of, or is an appurtenance to, the Collateral (collectively, the "**Postpetition Collateral**"), up to a total collateral value of $141,443.35.  The Postpetition Liens shall in all cases be prior and senior to all liens, encumbrances and security interests in and to such Postpetition Collateral granted by operation of law or consensually by the Debtor after the Petition Date except for liens, encumbrances and security interests that meet the following three conditions: (x) the lien, encumbrance or security interest is incidental to the conduct of the business of the Debtor; (y) the lien, encumbrance or security interest arises by operation of any applicable law; and (z) pursuant to applicable law, the lien, encumbrance or security interest ranks prior and senior to, or *pari passu* with, the Postpetition Liens.

Limitations on Cash Collateral.  No proceeds of the Collateral or Cash Collateral shall be used, without the prior written consent of the Secured Creditor for the purpose of objecting to, challenging or contesting in any manner, or in raising any defenses to, the amount, validity, extent, perfection, priority or enforceability of the Prepetition Obligations, or any liens or security interests with respect thereto, including, without limitation, pursuant to Sections 105, 510, 544, 547, 548, 549, 550 or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise.

Modification of Automatic Stay.  The Automatic Stay shall be modified to the extent necessary, if at all, to take all actions necessary to implement and effectuate the terms and conditions of this Stipulation and Agreed Order, including, without limitation, to allow the Secured Creditor, upon the occurrence of a Termination Event, to terminate the use of Cash Collateral in accordance with this Order.

Effectiveness Conditioned Upon Court Approval of AP Stipulation.  This Stipulation and Agreed Order shall not be binding on the Parties and shall have no effect unless and until the Court enters orders approving each of this Stipulation and Agreed Order and the AP Stipulation.  If the Court does not approve both this Stipulation and Agreed Order and the AP Stipulation, then this Stipulation and Agreed Order shall be null and void, and the Parties shall be restored to their respective rights that existed prior to entry into this Stipulation and Agreed Order.

Termination. The Debtor's authorization to use Cash Collateral hereunder shall terminate on the date of the occurrence of a Termination Event (as defined below), such date referred to as the "**Termination Date**".  Each of the following events shall immediately constitute a termination event ("**Termination Event**"), upon the occurrence of which the use of Cash Collateral pursuant to this Order shall terminate (except as the Secured Creditor may otherwise agree in writing) upon the earliest to occur of:

a.      The reversal, vacatur or, modification or stay of this Stipulation and Agreed Order in any manner materially adverse to the Secured Creditor, without the prior written consent of the Secured Creditor, or the Debtor shall file any pleading seeking the foregoing relief;

b.      The entry by the Court of an order (i) dismissing the Chapter 11 Case, (ii) converting the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code, or (iii) appointing a Chapter 11 trustee or an examiner where such Chapter 11 trustee or examiner is given the power to operate the Debtor's business, or the Debtor shall file any pleading seeking the foregoing relief;

c.      The failure of the Debtor to make any payment as set forth in this Stipulation and Agreed Order or AP Stipulation when due;

d.      The failure of the Debtor to comply with the benchmarks set forth in Paragraph 2.05 of the AP Stipulation herein;

e.      Commencement of any action or the filing of any pleading by the Debtor against the Secured Creditor challenging the matters stipulated to in the above Stipulations;

f.      The Postpetition Liens granted to the Secured Creditor shall cease to be valid, perfected and enforceable in all respects;

g.      Any representation or warranty of the Debtor made in this Stipulation and Agreed Order being materially false;

h.      The Debtor shall fail to comply with any other provision of this Stipulation and Order; and

i.      The Debtor shall fail to comply with any of the provisions of the AP Stipulation.

No failure of the Secured Creditor to enforce any right granted under this Stipulation and Agreed Order shall represent a waiver of such right.  The security interests, pledges, liens and all other protections granted to or reaffirmed in favor of the Secured Creditor in this Stipulation and Agreed Order shall remain in effect notwithstanding the occurrence or continuation of a Termination Event.

## RELIEF REQUESTED

25.      By this Motion, the Debtor seeks the approval of the Settlement Agreement and Cash Collateral Stipulation as being fair, equitable and in the best interest of the Debtor's estate in accordance with section 105(a) of the Bankruptcy Code and Rule 9019(a) of the Bankruptcy Rules.

26.      For the reasons set forth more fully below, the Debtor believes that the settlements contained in both Agreements fall well above the lowest level of reasonableness and are in the best interests of the estate. Accordingly, the Debtor respectfully requests the Court to approve the Agreements.

## LEGAL AUTHORITY FOR APPROVAL OF SETTLEMENTS

27.      Bankruptcy Rule 9019(a) permits this Court to approve settlements. The Rule provides: "On motion by the Debtor and after notice and a hearing, the court may approve a compromise or settlement.  Notice shall be given to creditors, the United States Debtor, the debtor,

and indenture Debtor as provided in Rule 2002 and to any other entity as the court may direct."

Fed. R. Bank. P. 9019(a).

28.     Compromises and settlements are a normal part of the bankruptcy process. *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424 (1968) *reh'g denied,* 391 U.S. 909 (1968).

29.     The Second Circuit has "set forth factors for approval of settlements based on the original framework announced in *TMT . . . ." Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating Inc.)*, 478 F.3d 452, 462 (2d Cir. 2007).  The factors are:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment; (3) "the paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement"; (4) whether other parties in interest support the settlement; (5) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement; (6) "the nature and breadth of releases to be obtained by officers and directors"; and (7) "the extent to which the settlement is the product of arm's length bargaining."

> *Id.* (quoting *In re Worldcom, Inc.*, 347 B.R. 123, 138); *see also City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974); *In re Ionosphere Clubs Inc.,* 156 B.R. 414 (S.D.N.Y. 1993); *In re Purofied Down Products Corp.,* 150 B.R. 519, 522 (S.D.N.Y. 1993); *In re International Distribution Centers Inc.,* 103 B.R. 420, 422 (S.D.N.Y. 1991); *In re Fugazy,* 150 B.R. 103, 106 (Bankr. S.D.N.Y. 1993); *In re Drexel Burnham Lambert Group Inc.,* 134 B.R. 493, 497 (Bankr. S.D.N.Y. 1991); *Crowthers McCall,* 120 B.R. at 287; *In re Texaco, Inc.,* 84 B.R. 893, 901 (Bankr. S.D.N.Y. 1988); *In re Lion Capital Group, Inc.,* 49 B.R. 163, 175 (Bankr. S.D.N.Y. 1985); *In re Carla Leather, Inc.,* 44 B.R. 457, 466 (Bankr. S.D.N.Y. 1984) *aff'd*, 50 B.R. 764 (S.D.N.Y. 1985); *see also 10 Collier on Bankruptcy,* §9019.02 (15th Ed. Revised 1998).

30.     The United States Court of Appeals for the Second Circuit has stated that the responsibility of the Judge is "not to decide the numerous questions of law and fact raised by appellants, but rather to canvass the issues and see whether the settlement falls below the lowest

point in the range of reasonableness." *In re W.T. Grant Co.,* 699 F.2d 599, 608 (2d Cir. 1983), *cert denied sub. nom. Cossoff v. Rodman,* 464 U.S. 822 (193). *Accord, In re Gardi,* 273 B.R. 4, 18 (Bankr. E.D.N.Y. 2002); *In re Interstate Cigar Co.,* 240 B.R. 816, 822 (Bankr. E.D.N.Y. 1999); *In re Spielfogel,* 211 B.R. 133, 143-44 (Bankr. E.D.N.Y. 1997); *Purofied,* 150 B.R. at 522-23. The assessment of a settlement only requires identification of the issues in controversy "so that the bounds of reasonableness can be seen with some clarity." *Carla Leather, Inc.,* 44 B.R. at 470.

31.    In considering a proposed settlement, the court is guided by a lenient standard consistent with the theory that "little would be saved by the settlement process if bankruptcy courts [had to conduct] . . . an exhaustive investigation and determination of the underlying claims in order to approve a settlement." *Purofied,* 150 B.R. at 522-23. In *Carla Leather*, the Court explained the policy underlying the abbreviated review of settlements under Bankruptcy Rule 9019 as follows:

> The very uncertainties of outcomes in litigation, as well as the avoidance of wasteful litigation expense, lay behind the Congressional infusion of a power to compromise . . . This could hardly be achieved if the test on hearing for approval meant establishing success or failure to a certainty.

> *Carla Leather,* 44 B.R. at 470; *see also Purofield,* 150 B.R. at 522-23.

32.    In evaluating the propriety of a settlement, a court need not conduct a trial or even a "mini-trial" on the merits to actually resolve the exact factual and legal issues. *Interstate Cigar,* 240 B.R. at 822; *Spielfogel,* 211 B.R. at 143-33. Rather, the court must simply consider whether against the background of those issues, the settlement is reasonable. *Newman v. Stein,* 464 F.2d 689, 692 (2d Cir. 1972), *cert denied sub nom. Benson v. Newman,* 409 U.S. 1039 (1972); *see also International Distribution Centers Inc.,* 103 B.R. at 423; *Drexel Burnham Lambert Group Inc.,* 134 B.R. 493. In so doing, the court may consider the settlement in the context of its familiarity

with the history of the case, the complexity of the claims alleged, the parties, and the context in which the claims and the settlement arose. *See Anderson,* 390 U.S. at 444.

33.     The settlement evaluation process is not designed to substitute the court's judgment for that of the Debtor. *Carla Leather,* 44 B.R. at 465. While a court is not expected to "rubber stamp" the Debtor's proposed settlement, *Ionosphere Clubs Inc.,* 156 B.R. at 426, the court should give considerable weight to a Debtor's informed judgment that a compromise is fair and equitable. *Anderson,* 390 U.S. at 444; *International Distribution Centers,* 103 B.R. at 423; *Drexel Burnham Lambert,* 134 B.R. at 496; *Carla Leather,* 44 B.R. at 472. As stated by the district court in *International Distribution Centers,* the court should give weight to the support of not only the Debtor but of other counsel to a settlement in determining the wisdom of the compromise. *Id.* at 423. Thus, a court should consider both the proponents' opinions and independently evaluate the arguments both for and against the settlement to determine whether the settlement should be approved. *Purofied,* 150 B.R. at 523.

34.     The court, apprised of the facts of the controversy and the risks and costs of the litigation, is bestowed with broad discretion to approve settlements that fall within the range of reasonableness. *Purofied,* 150 B.R. at 523; *Texaco, Inc.,* 84 B.R. at 901. The proposed settlement need not be ideal, but merely above the lowest point in the range of reasonableness under the circumstances. *See, W.T. Grant,* 699 F.2d at 613 14; *Newman v. Stein,* 464 F.2d at 693; *Purofied,* 150 B.R. at 523-24. This concept of a "range of reasonableness" recognizes "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent to taking any litigation to completion. *Newman v. Stein*, 464 F.2d at 693. Thus, a court should not insist upon the best possible settlement, but only that a settlement is within the range of reasonableness.

35.     In summary, the "very purpose of compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation." *Newman v. Stein,* 464 F.2d at 692.

## DISCUSSION

36.     The Debtor respectfully submits that the Agreements fall well above the lowest point in the range of reasonableness and that the Agreements were negotiated at arm's length. There were multiple factors that the Debtor considered in reaching settlement.

37.     First, the Agreements provide certainty, and the Debtor avoids litigation with respect to the Adversary Proceeding and the Cash Collateral Issue, which litigation is inherently uncertain and costly.

38.     Second, the Settlement Agreement resolves the Creditors' Claim against the Debtor with respect to the EDNY Settlement and fixes the Creditors' Claim in this bankruptcy proceeding as provided above, allowing the Debtor to propose a confirmable plan of reorganization. Under the Settlement Agreement, the deadline for the Debtor to amend its Plan is May 7, 2026. Upon approval of the Agreements, the Debtor is posed to proceed toward confirmation and begin solicitation of ballots.

39.     Third, the Cash Collateral Stipulation will allow the Debtor to sell its existing inventory immediately to generate revenues and cycle to more current designs, while providing the Creditors with a continuing lien on new inventory up to the value of the Secured Claim.

40.     Finally, the Debtor believes that the Settlement Agreement is in the best interest of the Debtor's estate because it resolves these critical issues (the Adversary Proceeding and Cash Collateral Issue) between the Parties and allows the Debtor to proceed in this case unhindered.

19

41.    As a result of all the above, the Debtor, in the exercise of its business judgment, entered into the Agreements, subject to this Court's approval. The Debtor submits that the Agreements are fair, reasonable and in the best interest of the Debtor's estate.

**WHEREFORE**, for all the reasons set forth herein, the Debtor respectfully requests that this Honorable Court enter an order: (i) authorizing the Debtor to enter into and approving the Settlement Agreement; and (ii) authorizing the Debtor to enter into and approving the Cash Collateral Stipulation; together with (ii) such other, further and different relief that this Court deems just, proper and equitable.

Dated: April 13, 2026                   Respectfully submitted,
      Huntington, New York

                                   **Rosen, Tsionis & Pizzo, PLLC**

                               By:    */s/ Avrum J. Rosen*
                                       Avrum J. Rosen, Esq.
                                       Daniel J. LeBrun, Esq.
                                       38 New Street
                                       Huntington, NY 11743
                                       Tel: (631) 423-8527
                                       arosen@ajrlawny.com
                                       dlebrun@ajrlawny.com

                                     *Counsel for the Debtor*
                                     *and Debtor-In-Possession*