# EXHIBIT

## "A"

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

In re:                                                                    Case No.: 25-40076-ess

JEWELRY DESIGNER SHOWCASE, INC.                    Chapter 11 (Subchapter V)
*d/b/a* DANNUNZIO DESIGNED,


                                        Debtor.
-------------------------------------------------------------X
JEWELRY DESIGNER SHOWCASE, INC.
*d/b/a* DANNUNZIO DESIGNED,
                                        Plaintiff,
-against-                                                                 Adv Proc. No.: 25-01120-ess
STEVELINE, INC., and
STEVEN P. D'ANGELO,

                                        Defendants.
-------------------------------------------------------------X

## SETTLEMENT AGREEMENT

This settlement agreement (the "Settlement Agreement") is made by and between Jewelry Designer Showcase, Inc., the above-captioned debtor and debtor-in-possession (the "Debtor" or "Plaintiff") on the one side, and Steveline, Inc. ("Steveline") and Steven P. D'Angelo ("D'Angelo", and together with Steveline, the "Defendants") (collectively, the "Parties" and each individually as a "Party") on the other side. The Parties, through their respective undersigned counsel, agree to the facts and terms of the Settlement Agreement as follows:

## RECITALS

**WHEREAS**, on January 7, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code and elected to proceed under Subchapter V; and

**WHEREAS**, the Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or committee has been appointed in this case, except that Nathaniel Wasserstein, Esq. has been appointed as the Subchapter V Trustee pursuant to section 1183 of the Bankruptcy Code; and

**WHEREAS**, the Debtor filed its plan of reorganization dated April 4, 2025 [Bankr. ECF No. 47], as may be amended, modified, or supplemented from time to time (the "Plan"); and

**WHEREAS**, prior to the Petition Date, on February 20, 2023, D'Angelo, Steveline, SPG, Sheridan Group LLC, and Lawrence Rubin commenced an action against Arthur D'Annunzio (the Debtor's former President), the Debtor, PPAD Inc. & Associates, Paul Joseph DeVito, DeVito & DeVito, P.C., Sean Williams, Williams & Foster Consulting Group, LLC, and David Rosenblum

(the "EDNY Defendants") by the filing of a complaint in the United States District Court for the Eastern District of New York, in an action entitled *Steven P. D'Angelo et al. v. Arthur D'Annunzio et al*, Case No. 2:23-01322-GRV-ARL (the "EDNY Action"); and

WHEREAS, following mediation of the claims, on or about September 7, 2023, a Settlement Agreement, Escrow Agreement, and Mutual Releases (the "EDNY Settlement") was executed by D'Angelo, Steveline, SPG Sheridan Group LLC ("SPG"), PPAD Inc. & Associates ("PPAD"), the Debtor through its former president Arthur D'Annunzio ("D'Annunzio"), D'Annunzio individually, Sean Williams ("Williams"), Williams & Foster Consulting Group LLC ("WFCG"), David Rosenblum ("Rosenblum"), DeVito & DeVito P.C. ("D&D"), and Paul DeVito, Esq. ("DeVito"); and

WHEREAS, pursuant to the EDNY Settlement, on November 10, 2023, the Defendants recorded a UCC-1 financing statement against the Debtor and PPAD in the state of New York, bearing filing number 202311100425270 (the "UCC"), encumbering the Plaintiff's accounts receivable and inventory; and

WHEREAS, on January 8, 2024, the Debtor made the first payment under the EDNY Settlement to the Defendants in the amount of $200,000.00; and

WHEREAS, on March 2, 2025, the Defendants filed proof of claim number 9 (the "POC") in the Court's Claims Register, asserting a secured claim against the Debtor in the sum of $4,171,352.52 (the "Claim"); and

WHEREAS, on July 22, 2025, the Defendants filed a complaint (the "PPAD Complaint") in the Supreme Court of the State of New York, County of Westchester, against PPAD, Williams, WFCG, D&D, DeVito, and others, entitled *Steven P. D'Angelo et al. v. PPAD Inc. & Associates et al.*, Index No. 56458/2025 (the "PPAD Action")[1]; and

WHEREAS, pursuant to the PPAD Complaint, the Defendants generally seek recovery of funds from transferees of PPAD pursuant to New York State Debtor and Creditor Law to satisfy the debt owed to the Defendants under the EDNY Settlement and as otherwise set forth in the PPAD Complaint; and it is further

WHEREAS, on October 2, 2025, the Debtor filed a complaint in the Bankruptcy Court against the Defendants, pursuant to sections 105, 510, 544, 547, 548 and 550 of the Bankruptcy Code (the "Adversary Complaint"), commencing the adversary proceeding entitled *Jewelry Designer Showcase, Inc. v. Steveline Inc. et al*, Adv. Proc. No. 25-01120-ess (the "Adversary Proceeding"); and

WHEREAS, pursuant to the Adversary Complaint, the Plaintiff seeks, among other things: (i) mandatory subordination of the Defendants' Claim pursuant to section 510(b) of the Bankruptcy Code; and (ii) avoidance of the EDNY Settlement and $200,000.00 previously paid to the Defendants, and recovery thereof by the Debtor's estate; and

---

[1] As stated in the PPAD Complaint, the Debtor is not named as a party to the PPAD Action due to the instant bankruptcy proceeding and invocation of the automatic stay pursuant to section 362 of the Bankruptcy Code.

**WHEREAS**, the Defendants assert that they have defenses to the causes of action raised in the Adversary Complaint; and

**WHEREAS**, on November 5, 2025, the Court entered a stipulation and Order by and between the Plaintiff and Defendants extending the time for the Defendants to file an answer to the Adversary Complaint or otherwise move through and including December 9, 2025; and

**WHEREAS**, on November 25, 2025, the Court entered a stipulation and Order by and between the Plaintiff and Defendants further extending the time for the Defendants to file an answer to the Adversary Complaint or otherwise move through and including March 10, 2026, which was subsequently further extended by the Plaintiff in writing to April 21, 2026, and Plaintiff agrees to further extend such deadline from time to time upon submission of this Settlement Agreement and the Cash Collateral Stipulation (defined below) for the Court's review and approval; and

**WHEREAS**, the Defendants assert that, as a result of the EDNY Settlement and the UCC, the sale of the Plaintiff's pre-Petition Date inventory of gems is subject to the consent of the Defendants and/or Court approval pursuant to section 363(c) of the Bankruptcy Code (the "Cash Collateral Issue"); and

**WHEREAS**, the Parties have negotiated at arms' length and reached a global agreement, subject to the Bankruptcy Court's approval, resolving the Adversary Proceeding, as well as the Cash Collateral Issue which will be subject to Court approval by separate stipulation of the Parties (the "Cash Collateral Stipulation"); and

**WHEREAS**, the Parties have had the opportunity to consult with counsel of their respective choice in connection with the matters raised in this Settlement Agreement; and

**WHEREAS**, each of the Parties to this Settlement Agreement agree to bear their own costs and expenses, including attorneys' fees, arising out of the matters raised in this Settlement Agreement;

**NOW, THEREFORE**, in consideration of the recitals aforesaid and the mutual covenants herein contained, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

## AGREEMENT

1.      **Recitals Incorporated**.  The recitals and prefatory phrases and paragraphs set forth above are hereby incorporated in full and made a part of this Settlement Agreement.

2.      **Settlement Consideration**. As consideration for resolving the Adversary Proceeding and for the releases set forth in Section 6 below, the Parties agree as follows:

2.01 <u>Settlement Sum</u>. The Defendants, jointly, shall pay the sum of twenty-five thousand dollars ($25,000) (the "<u>Settlement Sum</u>") to the Plaintiff.

2.02 <u>Payment of Settlement Sum</u>. The Settlement Sum shall be remitted to the Plaintiff within thirty (30) days after either entry of (i) an Order approving this Settlement Agreement or (ii) an Order approving the Cash Collateral, whichever occurs later if not entered simultaneously, by the Bankruptcy Court.

2.03 <u>Treatment of the Defendants' Claim</u>. The Defendants' Claim will be bifurcated and treated as follows:

   a. <u>Secured Claim</u>. The Defendants will hold an allowed secured claim in the aggregate amount of **$141,443.35** (the "<u>Secured Claim</u>"). The Secured Claim shall be payable by the Plaintiff on the first (1st) day of each month, commencing the first (1st) day of the month following entry of a final, non-appealable Order of the Bankruptcy Court approving this Settlement Agreement. The Secured Claim will accrue interest at 16% per annum on $141,443.35 amortized over three (3) years (the "<u>Payment Period</u>"), resulting in a monthly payment of principal and interest of approximately $4,972.73 (the "<u>Monthly Payments</u>") for a total of thirty-six (36) months. Notwithstanding anything to the contrary in this Settlement Agreement or the Cash Collateral Stipulation, the aggregate amount of payments to be paid by the Plaintiff to the Defendants pursuant to this subparagraph shall be no less than $179,018.23.

   b. <u>Nonpriority Unsecured Claim</u>. The Defendants will hold an allowed nonpriority unsecured claim in the aggregate amount of **$708,556.65**, which will be paid *pro rata* with other allowed general unsecured creditors pursuant to the Debtor's Plan, as shall be amended by the Debtor in accordance with the terms and provisions of this Settlement Agreement and the Cash Collateral Stipulation and in form and substance acceptable to the Defendants (as amended, the "<u>Amended Plan</u>"). The Defendants shall not be entitled to further amend their POC without the prior written consent of the Plaintiff, and any attempt to make such amendments will be null and void.

   c. <u>Subordinated Claim</u>. The remainder of the Defendants' Claim (approximately **$3,321,352.52**) will be subordinated to the same priority as common stock equity holders of the Debtor pursuant to section 510(b) of the Bankruptcy Code.

   d. In the event that either (i) the Amended Plan is not confirmed by the Bankruptcy Court, or (ii) the Debtor defaults in its obligations to the

Defendants under the Amended Plan after being confirmed by the Bankruptcy Court, the Debtor shall be liable for the balance remaining of the Defendants' Claim, with credit for any payments remitted to the Defendants prior to the Debtor's default.

e.  The Defendants' Claim shall be deemed allowed as set forth above.  The Plaintiff and its bankruptcy estate waives, and shall be forever barred from asserting, any further objection or other challenge to the Defendants' Claim or, except as expressly provided in this Settlement Agreement, any right of setoff, recoupment, or other similar defense or reduction of liability against the Defendants on account of the Defendants' Claim.

2.04 <u>Defendants' Liens</u>. Provided that there are no uncured Events of Default under this Settlement Agreement or the Amended Plan (if confirmed by the Bankruptcy Court) continuing at such time, within five (5) business days of the Defendants' receipt of the final payment by the Plaintiff for the Secured Claim, the Defendants shall release any and all liens, claims, and encumbrances on the Plaintiff's assets and property (including but not limited to the UCC) by filing a UCC-3 termination statement and any other required releases, including, but not limited to, notices of lien release with state or county authorities where such liens or encumbrances are recorded. To the extent necessary, the automatic stay under section 362(a) of the Bankruptcy Code shall be deemed modified solely to permit the Defendants to take any and all actions necessary to effectuate the terms of this Settlement Agreement.

2.05 <u>Chapter 11 Plan Benchmarks</u>.

a.  Within **thirty (30) calendar days** after execution of this Settlement Agreement and the Cash Collateral Stipulation (whichever occurs later if not executed simultaneously), the Plaintiff shall file the Amended Plan consistent with the terms of this Settlement Agreement and the Cash Collateral Stipulation. Before filing the Amended Plan, the Debtor will provide a draft copy to the Defendants for review and approval, which approval will not be unreasonably withheld.

b.  Within **sixty (60) calendar days** after entry of final Orders of the Bankruptcy Court approving the Settlement Agreement and the Cash Collateral Stipulation (whichever occurs later if not entered simultaneously), the Plaintiff will confirm the Amended Plan consistent with the terms of this Settlement Agreement and the Cash Collateral Stipulation.

2.06 <u>Chapter 11 Plan Voting</u>. The Defendants will support and vote in favor of confirmation of the Plaintiff's Amended Plan, as may be further amended from time to time, with any such further amendments or modification subject to the

Defendants' review and approval, so long as the Amended Plan complies with the terms and conditions and spirit of this Settlement Agreement and the Cash Collateral Stipulation.

2.07 <u>Withdrawal of Adversary Proceeding</u>. No later than five (5) days entry of a final and non-appealable Order of the Bankruptcy Court approving this Settlement Agreement, the Plaintiff shall file a Notice of Dismissal with Prejudice in the Adversary Proceeding.

2.08 <u>Authorization to Name Plaintiff as Nominal Defendant (Limited Purpose) Upon Defendants' Election</u>.

a. Subject to the conditions in this provision, the Debtor consents to being named by the Defendants as a nominal defendant in the PPAD Action solely to the extent the Defendants reasonably determine, in good faith, that such naming is required or advisable to (i) comply with applicable procedural rules, (ii) preserve or perfect jurisdiction, (iii) obtain complete relief, or (iv) satisfy a court order or directive in the PPAD Action. For purposes of clarity, the Defendants shall be authorized, but not directed or obligated to name the Debtor as a nominal defendant in the PPAD Action in the Defendants' sole discretion.  The provisions of this Section 2.08 shall apply only if the Defendants so elect to name the Debtor as a nominal defendant in the PPAD Action.  The election by the Defendants to name the Debtor shall be without prejudice to, or waiver of, and rights and remedies of the Defendants in the PPAD Action, except as otherwise expressly set forth in this Paragraph 2.08.

b. The Defendants shall not assert, and shall not seek to assert, any claim for damages, penalties, fees, costs, or other monetary or coercive relief against the Debtor in the PPAD Action, except to the extent a court of competent jurisdiction within the Second Circuit or the State of New York expressly requires such pleading solely as a procedural formality and the Defendants simultaneously disclaim substantive relief against the Debtor.

c. Naming the Debtor as Nominal Defendant under this provision is not, and shall not be argued to be, an admission of liability, wrongdoing, or jurisdictional fact by either Party, and shall not be used to expand, revive, or create any released, waived, or settled claim between the Parties.

d. The Defendants shall use commercially reasonable efforts to identify the Debtor as Nominal Defendant in the caption and allegations as a *nominal* or *necessary* party only, and to include an express statement that no substantive relief is sought from the Debtor as Nominal Defendant, except as required by the court.

e. If service is required, the Debtor, as Nominal Defendant, shall accept service through counsel (if represented) or as otherwise reasonably designated in writing. The Debtor, as Nominal Defendant, may (but is not required to) enter a limited appearance, move to dismiss, or seek other relief consistent with nominal status, provided such actions do not materially prejudice the Defendants' ability to prosecute or defend the PPAD Action.

f. The Debtor shall provide reasonable cooperation consistent with nominal status, including executing customary acknowledgments, stipulations, or declarations that (i) confirm nominal status, (ii) disclaim substantive interest (if accurate), and (iii) facilitate dismissal or termination of the Debtor as Nominal Defendant at the earliest procedurally appropriate time, in each case to the extent reasonably requested in writing and not requiring the Debtor as Nominal Defendant to admit fault or incur material unreimbursed expense.

g. Unless otherwise required by a court order, the Defendants shall be responsible for the Debtor's reasonable, documented out-of-pocket costs incurred solely due to being named as a Nominal Defendant (including reasonable attorneys' fees for a limited appearance), provided that (i) the Debtor as Nominal Defendant gives prompt written notice and reasonable detail of such costs, (ii) the Defendants as Naming Party have a reasonable opportunity to mitigate or avoid such costs, (iii) such costs are not caused by the Debtor 's breach of this provision; and (iv) such costs are not related to any steps taken by the Debtor which are prejudicial to the Defendants or the claims asserted by the Defendants in this PPAD Action.

h. Before naming the Debtor as a Nominal Defendant (or, if not practicable, promptly thereafter), the Defendants shall provide written notice stating: (i) the proposed caption and the specific relief sought (confirming none is sought from the Nominal Defendant), and (ii) any anticipated service or appearance deadlines.

i. All notices under this provision shall be in writing and delivered by hand, facsimile, registered mail, or electronic mail to the address last provided by the receiving Party in writing; either Party shall advise the other in writing of any change of address for notice purposes. Notice is effective upon delivery as evidenced by receipt, transmission confirmation, or postal record, as applicable.

j. For the avoidance of doubt, the Plaintiff does not waive any rights or causes of actions it holds or may hold as against any parties to the PPAD

Action pursuant to Chapter 5 of the Bankruptcy Code, and any such rights are explicitly preserved and reserved by the Plaintiff.

2.09 <u>Contingency of Settlement</u>. This Settlement Agreement is contingent in all respects upon approval by the Bankruptcy Court of: (i) the Settlement Agreement; and (ii) the Cash Collateral Stipulation. For the avoidance of doubt, should this Settlement Agreement be approved, but not the Cash Collateral Stipulation, this Settlement Agreement will be of no force and effect.

3.      **Court Approval.**  The terms of the settlement contained within this Settlement Agreement are subject to Bankruptcy Court approval in the Bankruptcy Case and Adversary Proceeding as may be required pursuant to the Bankruptcy Code, the Bankruptcy Rules, and the E.D.N.Y. Local Bankruptcy Rules (the "<u>Local Rules</u>") by orders of the Bankruptcy Court authorizing the Plaintiff to enter into and perform the terms of this Settlement Agreement being entered and becoming final and non-appealable. The Plaintiff agrees to file such stipulations, dismissals, and motions to compromise as required by the Bankruptcy Court and to obtain any such approvals, including a Notice of Dismissal with Prejudice or a Stipulation of Discontinuance with Prejudice.

4.      **Denial by Court.**  Should the Bankruptcy Court decline to approve (i) the settlement contained within this Settlement Agreement, or (ii) the settlement contained within the Cash Collateral Stipulation, this Settlement Agreement shall be null and void, shall not be admissible in any court proceeding for any purpose, and the agreement or the fact that the Parties entered into the Settlement Agreement shall not constitute evidence of the truth of any of the Parties' allegations or the admissibility of any evidence that may be offered by the Parties in any court proceeding. In such a case, the Parties shall be restored to their respective rights that existed prior to entry into this Settlement Agreement.

5.      **Effective Date.**  Upon the entry of a final non-appealable order approving the settlement contained within this Settlement Agreement, the Settlement Agreement shall become effective.

6.      **Mutual Releases.** Except as provided herein, upon the orders approving this Settlement Agreement and the Cash Collateral Stipulation becoming final and non-appealable (whichever occurs later), the Parties shall be deemed to have, and shall have, released and forever discharged each other Party and their respective current attorneys, advisors, consultants, professionals, members, officers, employees and agents, and their successors and assigns from any and all claims and causes of action, of whatever kind, nature, character and description, whether in law or equity, whether in tort, contract or under other applicable law, whether known or unknown, whether liquidated or unliquidated, whether contingent or fixed, and whether anticipated or unanticipated, which Parties have, had, may ever had, or may ever claim to have, against each other Party arising from or related to the EDNY Action, the EDNY Settlement, the POC, the Cash Collateral Issue, and the Adversary Proceeding (collectively, the "<u>Releases</u>").

7.    **No Third-Party Beneficiaries**. The Parties expressly agree that the releases set forth in Paragraph 6 above are made solely for the benefit of the Parties and their respective permitted successors and permitted assigns, and that **no third-party is an intended or unintended third-party beneficiary** of the Releases or of any rights, benefits, protections, defenses, limitations, or immunities arising from or relating to the Releases except as explicitly set forth herein.  Without limiting the provisions of this Section 7 of the Settlement Agreement, this Settlement Agreement and its terms and provisions shall not be cited or referred to by any party as an admission by Defendants that the Debtor or the Debtor's bankruptcy estate have valid claims against them and shall not prejudice any rights, remedies or claims of the Defendants against any third-party for any reason or in any capacity.

7.01. No Rights or Remedies. Nothing in the Releases (or elsewhere in this Settlement Agreement), whether express or implied, shall be construed to confer upon any third-party any legal or equitable right, benefit, claim, remedy, defense, or cause of action of any nature whatsoever by reason of the Releases or this Settlement Agreement, and no third-party shall have any right to enforce, directly or indirectly, any term of the Releases or this Settlement Agreement.

7.02 No Reliance; No Expansion. The Parties further agree that (a) no third-party has relied, or is entitled to rely, on the Releases, and (b) the Releases shall not be interpreted to expand, create, revive, or preserve any right, defense, or limitation for any third-party, including any argument that a third-party is released, discharged, or otherwise protected by the Releases.

7.03 No Discharge of Third-Party Obligations. Without limiting the foregoing, nothing in the Releases or this Settlement Agreement is intended to, and nothing herein shall, relieve, discharge, impair, or otherwise affect any obligation or liability that any third-party may have to either Party, or that either Party may have to any third-party.

7.04 No Subrogation or Derivative Enforcement. No third-party shall have any right of subrogation, derivative enforcement, assignment-by-operation-of-law, or similar right to assert, enforce, or benefit from the Releases, and each Party may assert this clause as a complete defense to any attempt by a third-party to claim beneficiary status or enforcement rights under the Releases or this Settlement Agreement.

7.05 Exclusive Enforcement by the Parties. Only the Parties (and, if applicable, their respective permitted successors and permitted assigns) may enforce the Releases and this Settlement Agreement, and the Parties intend that any enforcement, interpretation, or application of the Releases shall be determined solely as between the Parties in accordance with this Settlement Agreement.

Case 1-25-40076-ess    Doc 93-1    Filed 04/13/26    Entered 04/13/26 13:35:38

8.      **Proofs of Claim.**  The Defendants shall not file any further proofs of claim in the Bankruptcy Cases without the Debtor's prior written consent. For purposes of clarity, pursuant to this Settlement Agreement, the Defendants shall have (i) an allowed secured claim in the amount of $141,443.35; (ii) an allowed nonpriority unsecured claim in the amount of $708,556.65; and (iii) an allowed subordinated claim in the amount of $3,321,352.52.

9.      **Fees and Costs**.  Except as otherwise set forth herein, each of the Parties to this Settlement Agreement agrees to bear their own costs and expenses, including attorneys' fees arising out of the matters raised in this Settlement Agreement.

10.     **Default**.

10.01   Events of Default by Defendants.  The occurrence of any one or more of the following events or conditions shall constitute an Event of Default by the Defendants under this Settlement Agreement:

a)  Any failure by the Defendants to make payment of the Settlement Sum to the Plaintiff pursuant to Section 2.02 of this Settlement Agreement when such payment becomes due and payable which remains uncured for more than five (5) business days after written notice to the Defendants and Defendants' counsel by the Plaintiff.

10.02   Events of Default by Plaintiff.  The occurrence of any one or more of the following events or conditions shall constitute an Event of Default by the Plaintiff under this Settlement Agreement:

a)  Any failure by the Plaintiff in connection with this Settlement Agreement or the Amended Plan (if approved by the Bankruptcy Court) to make payment of principal or interest when such payment becomes due and payable which remains uncured for more than five (5) business days after written notice to the Plaintiff and Plaintiff's counsel by the Defendants. For purposes of clarity, interest calculated in accordance with this Settlement Agreement shall continue to accrue on any amounts owed during the pendency of any cure period set forth in this subparagraph and the Plaintiff is obligated to cure such interest accrual simultaneously with any cure payment due hereunder.

b)  Failure by the Plaintiff to meet the benchmarks for confirmation of the Amended Plan under Section 2.05 of this Settlement Agreement (except if such failure is due to the lack of available hearing dates with the Bankruptcy Court), without the prior consent of the Defendants, which consent will not be unreasonably withheld.

c)  The entry by the Bankruptcy Court of an order authorizing the appointment of an interim or permanent trustee in the Bankruptcy Case (other than the Subchapter V Trustee) or the appointment of an

examiner in the Bankruptcy Case with expanded powers to operate or manage the financial affairs, business, or reorganization of the Debtor.

d) The Debtor's Bankruptcy Case shall be converted from a case under chapter 11 of the Bankruptcy Code to a case under chapter 7 of the Bankruptcy Code.

e) An order dismissing the Bankruptcy Case shall have been entered.

11. **<u>Remedies of Plaintiff</u>**.

11.01  <u>Interest on Settlement Sum</u>. Upon the occurrence and continuance of any uncured Event of Default by the Defendants, including the failure to timely remit the Settlement Sum in accordance with Section 2.02 of this Settlement Agreement, interest shall accrue on the outstanding balance of the Settlement Sum at a rate of sixteen percent (16%) per annum from the date of such default to the date of payment.

11.02  <u>Right to Offset</u>. Upon the occurrence and continuance of any uncured Event of Default by the Defendants, including the failure to timely remit the Settlement Sum in accordance with Section 2.02 of this Settlement Agreement, the Plaintiff may offset the principal amount of the Secured Claim payable by the Plaintiff by the unpaid balance of the Settlement Sum, including any interest which may be applicable pursuant to Section 11.01 of this Settlement Agreement.

12. **<u>Remedies of Defendants</u>**.

12.01  <u>Declare Default</u>. Upon the occurrence and continuance of any uncured Event of Default by the Plaintiff, without further order of, application to, or action by the Bankruptcy Court, the Defendants may declare their Claim, all interest thereon and all other amounts and obligations payable under this Settlement Agreement to be immediately due and payable, whereupon the Claim, all such interest and all such amounts and obligations shall become and be immediately due and payable, however, the Plaintiff reserves the right to contest the adequacy of notice of such default and/or the basis for the default.

12.02  <u>Relief From Stay</u>. Upon the occurrence and continuance of any uncured Event of Default, the Defendants shall be entitled to, and Plaintiff consents to immediate entry, without prior notice or a hearing, of, an order vacating the automatic stay provided in section 362 of the Bankruptcy Code in order to exercise all of their rights and remedies under this Settlement Agreement, the Cash Collateral Stipulation and applicable law, including, without limitation, with respect to the Collateral or Postpetition Collateral (as defined in the Cash Collateral Stipulation).

13.    **Notices.**    Unless otherwise expressly provided herein, all notices and other communications provided for in this Settlement Agreement shall be in writing and shall be delivered by hand or overnight courier service, mailed by certified or registered mail or sent by electronic transmission, as follows:

(a) If to the Plaintiff:

Jewelry Designer Showcase, Inc.
c/o Martin Trautmann
1680 Michigan Ave, Suite 700 Nr 520
Miami Beach, FL 33139

With a copy to:

Rosen, Tsionis & Pizzo, PLLC
38 New Street
Huntington, NY 11743
Attn: Daniel J. LeBrun, Esq.
Tel: (631) 423-8527
E-mail: dlebrun@ajrlawny.com

(b) If to the Defendants:

Steveline Inc.
c/o Steven P. D'Angelo
47 North Sheridan Avenue
Bethpage, NY 11714

With a copy to:

Phillips Lytle LLP
810 Seventh Avenue, 18th Floor
New York, NY 10019-5789
Attn: Nickolas Karavolas, Esq.
Tel: (212) 759-4888
E-mail: nkaravolass@phillipslytle.com

14.    **Modifications to the Settlement Agreement.**    This Settlement Agreement shall not be modified, altered, amended, or vacated without the prior written consent of the Parties. Any such modification, alteration, amendment, or variation in whole or in part shall be subject to approval of the Bankruptcy Court.  Any motion or application brought before the Bankruptcy Court to resolve any dispute arising or related to this Settlement Agreement shall be brought on proper notice in accordance with the relevant Bankruptcy Rules and the Local Rules of the Bankruptcy Court.

15.    **Counterparts.**  This Settlement Agreement may be executed in any number of counterparts by the Parties on different counterpart signature pages, all of which taken together shall constitute one and the same agreement.  Any of the Parties may execute this Settlement Agreement by signing any such counterpart and each of such counterparts shall for all purposes be deemed an original.  This Settlement Agreement may be executed by electronic signature or by facsimile and/or e-mail which shall have the same force and effect as an original signature.

16.    **Language Construed as Jointly Drafted by the Parties.**  The Parties agree that each of them has had a full opportunity to participate in the drafting of this Settlement Agreement and, accordingly, any claimed ambiguity shall be construed neither for nor against either of the Parties.

17.    **Entire Agreement.**  Prior agreements, understandings, or discussions, both written and oral, among the Parties in respect to the resolution recited herein, are merged into this Settlement Agreement.  This Settlement Agreement is the entire agreement among the Parties and supersedes all other of the subject matter hereof.

18.    **Successors and Assigns.**  This Settlement Agreement shall be binding upon and inure to the benefit of the Parties hereto, and their respective executors, heirs, successors and assigns.

19.    **Further Assurances.**  From time to time, upon request, the Parties will, without further consideration, promptly execute, deliver, acknowledge and file all such further documents agreements, certificates and instruments and to do such further acts as the persons or entities entitled to the benefit of this Settlement Agreement may reasonably require to evidence or effectuate the transactions contemplated by this Settlement Agreement.

20.    **Illegality.**  If any provision of this Settlement Agreement is held to be illegal, void or unenforceable, such provision shall be of no force or effect. However, the illegality or unenforceability of such provision shall have no effect upon, and shall not impair the legality or enforceability of, any other provision in this Settlement Agreement. Notwithstanding the foregoing, upon any finding by any court of competent jurisdiction that any release provided for in this Settlement Agreement is illegal, void or unenforceable, each of the Parties agree, promptly upon the request of the other Party hereto, to execute a release that is legal and enforceable.

21.    **Governing Law/Jurisdiction.**   EXCEPT TO THE EXTENT (IF ANY) GOVERNED BY THE BANKRUPTCY CODE, THE SETTLEMENT AGREEMENT AND THE RIGHTS AND DUTIES OF THE PARTIES HEREUNDER SHALL BE GOVERNED BY AND CONSTRUED, ENFORCED AND PERFORMED IN ACCORDANCE WITH THE LAW OF THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO PRINCIPLES OF CONFLICTS OF LAWS THAT WOULD REQUIRE THE APPLICATION OF LAWS OF ANOTHER JURISDICTION.  THE PARTIES ACKNOWLEDGE AND AGREE THAT THE BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF NEW YORK SHALL HAVE THE EXCLUSIVE JURISDICTION OVER THIS SETTLEMENT AGREEMENT AND THAT

ANY CLAIMS ARISING OUT OF OR RELATED IN ANY MANNER TO THIS SETTLEMENT AGREEMENT SHALL BE PROPERLY BROUGHT ONLY BEFORE THE BANKRUPTCY COURT AND CONSENTS TO SUCH BANKRUPTCY COURT'S POWER TO HEAR AND DETERMINE ALL SUCH CLAIMS AS A CORE PROCEEDING.

22.    **No Admission of Liability.**   This Settlement Agreement is in compromise of disputed claims between the Parties and shall not be construed as an admission of liability by the Parties or by any of their respective present or former directors, officers, employees or agents, which such liability is expressly denied.   All communications (whether oral or in writing) between and/or among the Parties, their respective counsel and/or other respective representatives relating to, concerning or in connection with this Settlement Agreement, or the matters covered hereby and thereby, shall be governed and protected in accordance with the Federal Rule of Evidence 408 and all other similar rules and laws to the fullest extent permitted by law, and no Party hereto shall seek to admit this Settlement Agreement into evidence against any other party hereto, except in an action to enforce or interpret the terms of this Settlement Agreement.

23.    **Acknowledgment of the Parties.**   Each of the Parties acknowledges that: (i) he/she/it has relied on their own independent investigation, and has not relied on any information or representations furnished by any other Party or any representative or agent thereof in determining whether or not to enter into this Settlement Agreement (other than the representations set forth in this Settlement Agreement); (ii) he/she/it has conducted his/her/its own due diligence in connection therewith, as well as undertaken the opportunity to review information, ask questions and receive satisfactory answers concerning the terms and conditions of this Settlement Agreement; and (iii) he/she/it possesses the knowledge, experience and sophistication to allow him/her/it to fully evaluate and accept the merits and risks of entering into the transactions contemplated by this Settlement Agreement.

24.    **Authorization.**  The person executing this Settlement Agreement on behalf of each respective Party warrants and represents that she or he is authorized and empowered to execute and deliver this Settlement Agreement on behalf of such Party.

[Remainder of Page Intentionally Left Blank]

**IN WITNESS WHEREOF**, the Parties hereto have executed and delivered this Settlement Agreement as of the date and year below written.

**Rosen, Tsionis & Pizzo, PLLC**

*Attorneys to Jewelry Designer Showcase Inc.*

By:     */s/ Daniel J. LeBrun*
      Daniel J. LeBrun, Esq.
      38 New Street
      Huntington, New York 11743
      (631) 423-8527
      dlebrun@ajrlawny.com


Dated: April 7, 2026
Huntington, New York

**Phillips Lytle LLP**

*Attorneys for Steveline Inc. and*
*Steven P. D'Angelo*

By:     */s/ Nickolas Karavolas*
      Nickolas Karavolas
      810 Seventh Avenue, 18th Floor
      New York, New York 10019-5789
      (212) 508-0477
      nkaravolas@phillipslytle.com


Dated: April 7, 2026
New York, New York